## J. H. WROMPELMEIR & CO. v. LEVI MOSES.

1. ATTACHMENT. *Plea in abatement. Verification of.* The settled rule is, that the affidavit verifying a plea in abatement must be positive as to the truth of the facts contained in the plea, and should leave nothing to be collected by inference or intendment. A verification of such plea upon the "knowledge, information and belief" of the affiant is insufficient.

   Cases cited: Bank of Tennessee *v.* Jones, 1 Swan, 392; Trabue *v.* Higden, 4 Cold., 624; Friedlander *v.* Pollock, 5 Cold., 495.

2. SAME. *Amendment of affidavit.* An amendment of a defective affidavit, offered to be made after the proof was taken, but before the hearing, should have been allowed by the Court below, especially as it is apparent that the affidavit was merely formal, and could have worked neither injury nor delay. But this is not an error which affects the merits of this case.

3. SAME. *Grounds for attachment.* The defendant had been a regular furniture merchant for a number of years; his stock of furniture on hand was worth three or four thousand dollars; he was indebted something over four thousand dollars, and he owned real estate in the place of his residence, unincumbered, worth $10,000. The complainants failed to sustain their allegation of defendant being about fraudulently to remove his stock of furniture to Georgia.

J. H. Wrompelmeir & Co. v. Levi Moses.

*Held,* That even if he had been about to remove, etc., leaving ten thousand dollars worth of real estate, the above facts being proven, it could not have authorized a resort to an attachment. The property to be left would have been ample to meet his liabilities.

Cases cited: Jackson v. Burke, 4 Heisk., 612; McHaney v. Cauthorn, 4 Heisk., 509.

Code cited: ₴3455.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court.   E. H. EAST, Chancellor.

PHILIP LINDSLEY and DEMOSS & MALONE for Wrompelmeir.

GUILD & SMITH for Moses.

NICHOLSON, C. J., delivered the opinion of the Court.

Complainants held three notes on defendant, amounting to about $900.   On the 16th of December, 1869, before either of the notes had matured, complainants filed their attachment bill in the Chancery Court at Nashville, alleging, among other things, that "defendant is about to remove the stock of goods he has on hand, and which is all the property he owns in the world, to the State of Georgia, or somewhere outside of the State of Tennessee," and praying that the goods of defendant be attached to satisfy their claim.   The attachment was isued and levied on a lot of furniture of defendant.   The defendant appeared and filed his plea in abatement, traversing, on his own knowledge,

all the grounds for the attachment set out in the bill. To the plea was this affidavit:

"Came Levi Moses before me, the Clerk of the Chancery Court, and made oath that the facts stated in the foregoing plea are true, to the best of his knowledge, information and belief.

Signed,　　　　　LEVI MOSES.

Sworn to before me, December 18, 1869.

M. B. HOWELL, C. & M."

Complainants moved to strike the plea from the files, because the verification to said plea is fatally defective, but the Chancellor overruled the motion. The parties, therefore, prepared the cause for hearing upon the plea in abatement. After all the proof on both sides was taken, and the cause was ready for hearing, defendant made an amended affidavit to his plea, which was as follows:

"Came Levi Moses, in proper person, and made oath that the foregoing plea is true in substance and in fact.

Signed and sworn to, May 26, 1871."

The Chancellor proceeded, on the 5th of June, 1871, to render a decree in the cause, dismissing the attachment bill because the proof failed to show that defendant was about to remove his property out of the State. At the end of the decree the Chancellor added: "The amended affidavit of Levi Moses, made the 26th of May, 1871, was not considered by the Court, the first affidavit being sufficient."

The complainants have appealed.

It is insisted that the Chancellor erred in refusing to strike out the plea in abatement for want of a sufficient verification of the affidavit. The settled rule is, that the affidavit verifying such plea must be positive as to the truth of the facts contained in the plea, and should leave nothing to be collected by inference. Hence, the statement of the affiant that he "is informed and believes that the plea is true in substance and in fact" is insufficient. *Bank of Tennessee* v. *Jones*, 1 Swan, 392. So, also, if the plea is verified by affidavit, with the certificate of the Clerk: "Sworn to and subscribed before me," without more, it is insufficient. It does not appear from such verification that the affidavit is positive as to the truth of the plea, it may have been based on information and belief. *Trabue* v. *Higden*, 4 Cold., 624; *Friedlander* v. *Pollock*, 5 Cold., 495. In the last named case the verification was the same as in the case of *Trabue* v. *Higden*. Judge Smith, in that case, said: "Intendments are not allowed to supply defects. The settled practice of this State has been that pleas in abatement must be verified by written oath, and by positive form of statement. A statement of the information and belief of the affiant will not suffice."

In the case before us the verification is, that the "facts stated in the plea are true." If the affidavit had stopped here, the plea would have been verified by a positive statement of its truth, but he adds: "to the best of his knowledge, information and belief," thus qualifying the statement, and leaving to intend-

J. H. Wrompelmeir & Co. v. Levi Moses.

ment how much of the statement of facts was based on knowledge and how much on information and belief. We are, therefore, of opinion that the verification was insufficient, and that the Chancellor erred in refusing to have the plea taken from the files.

But we have seen that the parties prepared to try the issue made by the plea, and took proof on both sides, and were ready for the hearing, when the defendant amended his verification by making it strictly in accordance with the rule before referred to. The Chancellor, however, declined to consider the amended affidavit because he regarded the first one as sufficient. It is insisted for defendant that this was erroneous, and that as the defect in the first verification was merely formal, and as the issue was tried on its merits, the decree ought not now to be disturbed for the error in refusing to strike out the plea If the Chancellor had held the first verification insufficient under our practice, he would, of course, have allowed the defect to be corrected by amendment. We see that defendant was willing and ready to make the amendment, and, in the case of *Trabue* v. *Higden*, such an amendment was made after the lapse of several Terms, and this Court held that the amendment was properly allowed.

In the present case, the offer to amend was made after the proof was taken,' but before the hearing. Upon the authority of the case of *Trabue* v. *Higden*, we think the Chancellor ought then to have allowed the amendment, especially as it is apparent that the amend-

ment was merely formal, and could have worked neither injury nor delay. Both parties had prepared their proof upon the assumption that the issue was properly made up, and both were ready for trial on the issue which would have been made upon the amended verification. We are, therefore, of opinion that the present is a proper case for the application of §4516 of the Code, which provides that "no judgment, decision or decree of the inferior Courts shall be reversed in the Supreme Court, unless for error which affects the merits of the judgment, decision or decree complained of."

The remaining question is, whether the complainants have shown by proof that the defendant was about to remove his property out of the State in such a way as to entitle them to resort to an attachment. It is insisted for complainants that the attachment laws are to be liberally construed. This is true in the application of the remedy, after jurisdiction is acquired by a proper statement of one or more of the causes for which an attachment may issue. So far as the Statutes prescribe the causes for which attachments may issue, no material departure from the specific requirements of the law has ever been tolerated by this Court. The remedy is in derogation of the common law, harsh and summary in its operation, and very liable to be abused as an instrument of injustice and oppression. *Jackson* v. *Burke*, 4 Heisk., 612. The bill abounds in allegations of various phases of fraud; that defendant is utterly insolvent; that he is concealing, or endeavor-

ing to conceal, his property; that he is about fraudulent to dispose of his property; that he has, or is about fraudulently to convey his stock on hand to his son, or to one Heizlet. On all these allegations defendant took issue by his plea in abatement, and upon the proof it does not appear that there was any foundation for any of the charges of fraud.

But the complainants also alleged that defendant "was about to remove the stock of goods he had on hand, which was all the property he had in the world, to the State of Georgia." Defendant met this allegation by stating that, besides the stock of furniture on hand, worth three or four thousand dollars, about enough to pay all his debts, he owned real estate in Nashville, well improved and unincumbered, worth $10,000. He states that he had spoken of sending some of his fine furniture to Georgia to be sold, for the purpose of paying his debts. The case was thus narrowed down to the single question raised upon this allegation.

The proof shows that the defendant had been a regular furniture merchant for many years: that his stock of furniture on hand was worth three or four thousand dollars; that he was indebted something over four thousand dollars, and that he was the owner of real estate in Nashville, unincumbered, worth about $10,000, on which his family had resided for many years, and has continued to reside.

One witness, Nichol, proves that about the time the attachment was sued out, he heard the defendant

say frequently that he was tired of being annoyed with creditors dunning him, and that he intended to pack up his stock and remove to Georgia, and set up his son or sons in business. On cross-examination, this witness said his recollection was indistinct as to defendant's words in the conversation, but he had stated the impression made on his mind.

The defendant was examined, and said he told the witness that he intended to take some of his fine furniture to Georgia and sell it to pay his debts, and that he would take his son with him as a clerk. There was no evidence that defendant was making any preparations to remove any of his furniture, nor did any of the business men in his neighborhood observe any indications of such removal. His son proves that defendant never said anything to him about it, and he never heard of any contemplated removal of furniture. The burden of proof was on complainants to sustain their allegation, and the main reliance is upon the conversation alluded to, in support of the allegation. This conversation is explained by defendant, and by his explanation it is wholly insufficient to sustain the allegation.

It is said, in the case of *Jackson* v. *Burke*, 4 Heisk., 614, that the word "about," in the sense of the attachment laws, must be taken in its common acceptance, as defined by lexicographers—"near to in action, or near to, in the performance of some act." (Webst. Dict.)

In the case of *McHany* v. *Cauthorn*, 4 Heisk, 509,

in reference to the allegations necessary to be made under §3455 of the Code, the Court say : " The allegation must be of a fact susceptible of issue and proof; there must be an act already performed, or one to be performed, of which the preliminary steps or circumstances have already developed themselves, pointing naturally to the conclusion assumed and charged in the bill, the evidence of which consists of the conduct or declarations of the party charged."

We think the proof entirely fails to support the allegation, upon the character of evidence required upon the holding of these cases. But, if it had been proved that defendant was about to remove his stock of furniture to Georgia, would that have authorized the resort to an attachment, in view of the fact that he was leaving in Nashville real estate worth more than double all of his debts?

It was said by this Court, in *Friedlander* v. *Pollock*, 5 Cold., 493, that " it is not possible to define by precise words, the amount of property removed, or about to be removed, which will bring the debtors within the scope of the Statute. It need not be all his property, nor will a comparative little suffice. It must be an amount of substantial consequence in reference to the ability of his estate to bear honestly the withdrawal of the amount away from his liability, in the domestic Court, to his creditors."

The rule cannot, probably, be laid down more definitely than it is here done. According to the proof, defendant's real estate was worth about ten

thousand dollars, and his stock of furniture from three to four thousand dollars, while his entire indebtedness was something over four thousand dollars. We think, upon the rule laid down, if defendant had been about to remove his entire stock of furniture, leaving ten thousand dollars worth of real estate, it would not have authorized a resort to an attachment. The property to be left would have been ample to meet his liabilities to his creditors.

We are, therefore, of opinion, that there was no error in the Chancellor's decree, and we affirm it, with costs.