ROANE COUNTY v. ANDERSON COUNTY.

(*Knoxville.*   October 11, 1890.)

1. COUNTY.   *Reduction of area below constitutional minimum not allowed.*

Reduction of the area of an old county below the constitutional mini-
mum of five hundred square miles cannot be effected either by act of
the Legislature or, *a fortiori*, of the County Court.

Constitution construed: Art. X., § 4.

Act construed: Acts 1889, Ch. 34.

Case cited and approved: Marion County v. Grundy County, 5 Sneed,
490.

2. SAME.   *Same.   Legislative power to restore lost territory.*

But the Legislature has the power to restore to a county territory which
it may have lost by its laches and long acquiescence in the claim and
possession thereof by another county, and for that purpose to detach
that territory from the latter county although the area be thereby
reduced below the constitutional minimum.

3. SAME.   *Loss of territory by laches.*

A county cannot, without express legislative permission, maintain suit,
on account of its laches, to recover territory—part of its ancient
domain—where, with full knowledge of its rights, it has acquiesced
in the assertion and exercise of ownership and jurisdiction over that
territory by another county for a long period of time.   Eighteen and
fifty years' acquiescence have been respectively held sufficient to defeat
the county's claim.

4. BOUNDARY.   *Call for line controls call for course.*

Call for course yields to call to run with a designated line, even if the
line is unsurveyed, provided it is susceptible of definite location.

5. SAME.   *Long acquiescence in line has great weight.*

In the ascertainment of the location of ancient lines, long acquiescence
of the parties interested in the location of a line at a particular place

should have great if not controlling weight, where there are no existing marks or living witnesses to show original location, and the calls and tradition are themselves vague and indefinite. County lines are subject to this rule.

---

FROM ROANE.

---

Appeal from Chancery Court of Roane County. H. R. GIBSON, Ch.

JAMES SEVIER, SAM EPPS YOUNG, and E. E. YOUNG for Roane County.

D. K. YOUNG, J. A. FOWLER, and C. J. SAWYERS for Anderson County.

LURTON, J. By an Act passed February 27, 1889, the line between Roane and Anderson Counties was so changed as to detach from Roane about 355 acres, upon which is located much of the new town of Oliver Springs. Roane County having an area of less than 500 square miles, filed this bill to restrain Anderson County from exercising the functions of local government over the territory thus annexed, upon the ground that the change of line operated to further reduce the area of the county, and that under the Constitution of the State this could not be done. Anderson County concedes that the area of Roane cannot, under the

Constitution, be reduced by any legislation, but insists that the territory in dispute was in law and fact within the ancient and constitutional limits of Anderson County, and that the Act is valid at least to the extent that the territory declared by the Act to be within Anderson County was in fact a part of the ancient domain of that county.

By cross-bill it insists that along a part of the line between the counties there has been a strip claimed by both, and by the cross-bill it seeks to ascertain the true boundary between. the counties, not only within the territory embraced in the Act of 1889, but the true line from Walden's Ridge to the double spring, and that this true line be declared the present line between the counties.

Roane County, both in the original bill and in the answer to the cross-bill, denies any doubt as to the true line, and insists that, the line between them runs from a point on Walden's Ridge east of the eastern of two gaps in the ridge, then south 19° east to the double springs. She insists that this is the ancient and constitutional line at the point in dispute, and that from time beyond which the memory of man runs not to the contrary, it has been recognized as the line, and that it has exercised control and jurisdiction up to this line, and that the territory placed in Anderson by the Act of 1889 lies west of this true line, thus reducing its area. Whether this line, thus claimed to have been the ancient and legal line, was in

law and fact the line originally established, it insists is now unimportant, for the reason that the long acquiescence of Anderson in this as the true line has operated by estoppel and laches to prevent Anderson from now asserting the contrary.

Both these counties were created by the Act of 1801. This Act describes the western line of Anderson at the point in dispute as follows: Beginning at a point in the northern boundary of the State, "thence south 45° west to a point from whence south 45° east will strike Walden's Ridge one quarter of a mile above the gap of the Indian Fork of Poplar Creek, thence to the double springs on the east fork of said creek."

The very next section establishes Roane County, and the call for its eastern line is as follows: Beginning at the north-east corner of Anderson County, "thence along said line north 45° west to the north-west corner thereof." The call here quoted, calling for course north 45° west, must be subordinated to the direction to run *"with the line"* of Anderson. Anderson had not been surveyed, and its western line, as will be seen by the recitation already made, did not at the point in dispute run north 45° west. To run the eastern line of Roane according to this call for course would not follow the line of Anderson, and would leave a strip between the counties belonging to neither county. It follows that we can only locate the eastern line of Roane by first locating the western line of Anderson.

Roane County *v.* Anderson County.

By the Act establishing these counties, Jesse Roysden was appointed a commissioner upon the part of Anderson County to survey and establish the line between it and Roane, and a commissioner was likewise appointed to represent Roane. No record of this survey can be found, and there is no satisfactory evidence of any line or corners marked by him. That Roysden did survey the line is established by the fact that in 1807 an Act was passed adopting the line surveyed by him as the line between Anderson and Roane. Unfortunately this Act gives none of the calls or courses of this line thus adopted. In the absence of any marked line, or of the calls and courses of the line surveyed by Roysden and adopted by the Legislature as the true line, we are compelled to resort to the indefinite calls in the Act of 1801, and to secondary evidence as to where the line ran as surveyed by the legislative commissioners. There are two gaps in Walden's Ridge near the point where all agree the corner of the counties should be. The natural object called the "double springs" is a point well known. The trouble arises from the indefiniteness of the call for a point "one-fourth of a mile above the gap of Indian Fork of Poplar Creek." A small stream flows through each of the two gaps, which unite within a quarter of a mile of a point south of the gaps. From the junction of these two streams there is no doubt but that the stream is identified as the stream called for in the Act. But above

the junction of the two forks there is great doubt
on' the evidence as to which was known in 1801
as the Indian Fork. The weight of evidence is
that at present, and for many years, the eastern
of these forks has been locally known as Cow
Creek, and that the western is now known as
Indian Fork. The proof from old entries, made
at about the time and shortly after the passage of
the Act of 1801, would seem rather to indicate
that these streams were then known as the West-
ern and Eastern Forks of the Indian Fork. These
forks make their way through Walden's Ridge
within a quarter of a mile of each other. They
are separated by a hill 250 feet above the level
of the streams. But the hill itself is very much
lower than the top of the ridge upon the east
and west of the general depression. Which of
these two contiguous gaps was known as the gap
of the Indian Fork in 1801 is extremely doubtful.
When we consider the fact that the whole region
was unsettled, and that the Indians were within
a few miles of this region, it is very probable
that the general depression through which these
two small creeks flowed was known as the gap of
Indian Fork. Another difficulty in the location
of the line on Walden's Ridge arises from the fact
that the point near the gap from which the line
is to run direct to double springs is a point des-
ignated as " one quarter of a mile *above* the gap
of the Indian Fork of Poplar Creek." By calling
for a point " *above* " the gap, did the Legislature

Roane County *v.* Anderson County.

use the word "above" with reference to the stream or the range of mountains called Walden's Ridge, or was it used with general reference to the north as being above? Very plausible arguments have been made in favor of each of these views. We are unable to come to any satisfactory conclusion with reference to the meaning attached to this word. We get, upon the whole, little, if any, assistance in settling the true corner near this gap from the terms of the Act establishing these counties.

We turn from the Act of 1801 to a vast mass of hearsay evidence as to where this line near the gap is said to have been located. Here again there is much confusion. Many witnesses testify to declarations made by old settlers near the gap, now deceased, who declared the line to begin on a walnut in the western gap, and to run thence to the double springs. Equally as many testify to declarations, in many cases from the same residents, that the corner was upon the ridge and east of the eastern of the two gaps. The greater weight attaches to the latter class of witnesses. We reach this conclusion for two reasons: (1) Because a line beginning in the western of the two gaps would entirely ignore the call in the enabling Act, which located the call one-quarter of a mile "above" the gap. Any construction that might be adopted would not begin the line to the double springs in either of the gaps. (2) Among the witnesses who testify to declarations of de-

ceased residents along the disputed line are sons and grandsons of the very earliest settlers near the gap, and these, for the most part, say that their ancestors claimed the line to begin on the ridge east of the eastern gap. The witnesses to the contrary view were unconnected with the deceased declarants, and many of them were only occasionally at the gap.

The means of information possessed by the witnesses who speak of their own understanding of the location of this line is favorable to the contention of Roane County. In support of this hearsay and opinion evidence, there remains the very powerful fact that notwithstanding there has been among the residents of this locality some difference of opinion as to where the true legal line was, the county of Roane has at all times, up to the passage of the Act of 1889, claimed and exercised governmental jurisdiction up to the line beginning east of the eastern gap. Whatever claims have been advanced favorable to the contention of Anderson, by either the county or its officers, have been sporadic and ineffective.

Steadily and persistently the jurisdiction of Roane over the disputed territory has been asserted and exercised. In this the county of Anderson has, with some discontent at times, acquiesced. The legal claim of the county has never been asserted, and for half a century it has accepted the line as claimed by Roane to be the true legal line. In a case decided at September Term, 1888, between

the counties of Roane and Loudon, we dismissed a bill in equity filed. by Roane County to recover territory which had been detached by an Act of the Legislature and added to the county of Loudon. The Act was void as having reduced Roane below its constitutional area.  But Roane had acquiesced in the Act for about eighteen years, and we held, on the facts, that by reason of laches in asserting title, a Court of Equity ought not to entertain so stale a claim.  This principle is applicable to Anderson County, so far as by its cross-bill it seeks to assert title to territory not embraced within the Annexation Act of 1889.  It is not applicable so far as the disputed territory is declared to be within its boundary.  The Act has accomplished what could not have been attained by litigation.  Laches would have repelled a suit, the Courts simply refusing to hear a stale demand.

Having recovered territory by an Act of legislation, it is, as to such territory, seeking no affirmative relief.  Laches would not operate to bar a defense to a suit seeking to recover territory annexed by an Act of legislative power.  So that, if Anderson County can show that the territory annexed by this Act was anciently within its domain, and has been unlawfully and without authority of law claimed and controlled by Roane, the defense will be effective, for laches has not operated to defeat the legal right, but had deprived it of legal remedy.

But while laches is no bar to the defense, yet it becomes, in a case like this, of very great weight in determining the truth of the claim now asserted as to the true line.

The evidential value of long acquiescence in a particular line as the true line is not lost because it does not amount to an estoppel, or because it is inoperative as laches.

The fact that Roane County has persistently exercised jurisdiction over this territory, and that Anderson County has submitted without an appeal to the Courts of the country, becomes a very weighty fact as evidence of the true line.

We therefore conclude that upon the whole proof the weight of evidence is that the line between Roane and Anderson begins at the point on Walden's Ridge fixed by the decree of the Chancellor as east of the eastern gap, and that it runs thence by a line south 19° east to the double springs. It follows that the Act of 1889 operates to detach from Roane County territory which was at the time within the boundary of that county. The Act is void and unconstitutional, inasmuch as the area of the county was less than 500 square miles. *Marion County* v. *Grundy County*, 5 Sneed, 490.

We have not deemed it necessary to discuss the effect of the line run by commissioners from the two counties in 1887. The survey was not accepted by Roane County. If it had been, it would not have been valid, as it would have

Roane County *v.* Anderson County.

operated to reduce the area of the county. What the Legislature could not constitutionally do, the County Court of Roane could not by its act or consent accomplish.

Affirm the decree.