In re CHEMICAL SEPARATIONS CORPORATION, Debtor.

A.G. CAMPBELL & CO., INC., Plaintiff,

v.

CHEMICAL SEPARATIONS CORPORATION, Defendant.

Bankruptcy No. 3–82–01569.
Adv. No. 3–82–1150.

United States Bankruptcy Court, E.D. Tennessee.

April 14, 1983.

William T. Alt, Chattanooga, Tenn., for plaintiff.

Kramer, Johnson, Rayson, McVeigh & Leake, Franklin J. McVeigh, Thomas M. Hale, Fowler & Rowntree, John A. Walker, Jr., Knoxville, Tenn., for defendant.

MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

Although the gravamen of this adversary proceeding concerns questions of contract law, there is an auxiliary issue involving the propriety of plaintiff's attachment, pursuant to Tenn.Code Ann. § 29–6–101(2) (1980), of defendant's bank account. Defendant contends plaintiff's affidavit, required by Tenn.Code Ann. § 29–6–113 (1980), was insufficient to support the issuance of the writ of attachment. Defendant also contends plaintiff either knew or should have known the averments in its supporting affidavit, furnished by A.G.

Campbell, president of the plaintiff, were untrue. While disputing the latter contention, plaintiff also maintains defendant waived any objection to the sufficiency of its affidavit by filing an answer to the merits of the complaint and failing to object to the sufficiency of the supporting affidavit. Furthermore, citing Tenn.Code Ann. § 29–6–124 (1980), plaintiff contends any deficiency in its affidavit is a matter of form, not substance, which may be corrected by amendment. This Memorandum is limited to the issues associated with the validity of the attachment of defendant's bank account.

I

On June 11, 1982, plaintiff A.G. Campbell & Co., Inc., a pipe fabricator in Chattanooga, filed its complaint in Hamilton County Chancery Court against defendant Chemical Separations Corporation (Chem Seps), a manufacturer of waste and water treatment systems. The affidavit of A.G. Campbell, dated June 18, 1982, in support of plaintiff's petition for an ancillary writ of attachment was filed on June 21, 1982. This affidavit recites in material part:

5. That Plaintiff is advised the Defendant is attempting to cease operations at its Knoxville, Tennessee location and that its equipment, some of which is for a project in Mississippi, part of which has been fabricated by Plaintiff, is about to be removed from Tennessee.

6. Deponent prays that Plaintiff be granted an attachment of One Hundred Six Thousand Four Hundred Eight Dollars ($106,408), together with costs, upon the personal property of Defendant in its bank accounts and at its facilities at One Technology Drive, Knoxville, Knox County, Tennessee, to answer for the indebtedness due Plaintiff in such amount arising from work, labor and services rendered at Defendant's specific request by Plaintiff, which is a just claim and for which attachment should issue under TCA § 29–6–101(2).

On June 21, 1982, based on the averments in Campbell's affidavit, the chancellor in Hamilton County issued a writ of attachment to the Knox County Sheriff, who thereupon attached a bank account of defendant Chem Seps at the former United American Bank of Knoxville. Because there were several outstanding checks issued against and payable from the attached account, defendant necessarily had to either furnish a sufficient bond to obtain a release of the attachment or contend with the payees of the outstanding checks and the concomitant, adverse effect upon its credit reputation. Defendant proffered a surety bond in the amount of $110,000.00 for the discharge of the attachment against its bank account. (The surety on the bond is Federal Insurance Co.) An order was entered, by the chancellor, on June 28, 1982, providing for the release of the attachment.

Defendant Chem Seps filed its answer and counterclaim in the chancery proceeding on August 20, 1982. Defendant does not deny it was indebted to plaintiff when the attachment was issued. However, in its counterclaim, defendant alleged no legitimate ground existed for the issuance of the writ of attachment because plaintiff either knew or should have known the statements in A.G. Campbell's supporting affidavit were false. As damages for the allegedly wrongful attachment, defendant requested judgment against plaintiff in the amount of $50,000.00.

On or about October 15, 1982, defendant filed its motion to quash the ancillary attachment and release its surety bond. For the first time, defendant specifically raised the issue of the sufficiency of Campbell's supporting affidavit. According to defendant, the affidavit is deficient because Campbell states only that he is affiant is advised defendant's equipment is being moved out of the state, as opposed to asserting such removal as a fact based upon personal knowledge. A request was made that defendant be permitted to withdraw the surety bond.

In response, a motion to amend the affidavit given in the ancillary attachment proceeding and a second affidavit of Campbell were filed. This second affidavit recites in material part:

2. That the affidavit of deponent, dated June 18, 1982, was for the purpose of affirmatively stating to this Court that defendant was about to remove its equipment from the State.

3. That deponent did not intend to modify or otherwise affect the true and full import of his statement concerning the removal of defendant's equipment from the State by the word "advise" as suggested by the instant motion's papers. Rather, it was deponent's purpose to state he was advised defendant was attempting to cease operations at Knoxville. A clerical error omitted the semicolon which should have followed "location" in paragraph "5" of the deponent's affidavit of June 18, 1982.

An affidavit dated October 28, 1982, of Carl R. Hazen, president of defendant Chem Seps, was offered in support of defendant's motion to quash the ancillary attachment and release the surety bond. Essentially, Hazen averred: (1) defendant Chem Seps did not own any property on or about June 18, 1982, (the date of A.G. Campbell's first affidavit) which was about to be removed from the State of Tennessee; and (2) the equipment which defendant was preparing to ship to Mississippi, a portion of which had been fabricated by plaintiff, actually belonged to TVA and was merely stored on defendant's premises pursuant to a contractual agreement.

Plaintiff, in reply to Hazen's affidavit, submitted an affidavit dated November 1, 1982, of Leon Riggs, vice-president of operations for defendant Chem Seps from April 27, 1981, until June 25, 1982. In apposite part Riggs' affidavit states:

4. On June 18, 1982, to deponent's personal knowledge, equipment was being shipped to the Caterpillar Company in Lafayette, Indiana, and other parts were about to be shipped. Such shipments were continuous until and after deponent left his employee [sic]. This equipment had a value of $50,000.

In addition, Chem-Seps equipment was being fabricated and assembled for shipment to Container Corporation in Fernandina Beach, Florida, of a value of $200,000. This equipment was about to be shipped on June 25, 1982, when deponent left Chem-Seps regular employ, and he has personally returned to Chem-Seps plant since June 25, 1982, and verified the equipment was in fact shipped.

In an effort to clarify the inconsistencies between the averments in the affidavits of Hazen and Riggs, a second affidavit of Carl R. Hazen was submitted by defendant. Hazen's second affidavit, dated February 25, 1983, provides in part:

3. On the 28th day of October, 1982, I made an affidavit in which I stated that on or about June 18, 1982, the Defendant, Chem Seps owned no property which was about to be removed from the State of Tennessee. This statement was addressed to whether or not sufficient of Chem Seps' property was about to be removed from the State of Tennessee such that a statutory ground authorizing the issuance of an attachment would exist pursuant to T.C.A. § 29–6–101(2). The statement was not intended to apply to the work product of Chem Seps which it had contracted with its various customers to design, fabricate and deliver, and which work product was being delivered both to its out-of-state customers and in-state customers in the ordinary course of business. Most of Chem Seps' customers are located outside the State of Tennessee.

4. On or about June 18, 1982, Chem Seps was in the process of finalizing the fabrication of equipment and preparing the same for delivery to its customers Caterpillar Company in LaFayette, Indiana, and Container Corporation in Fernandina Beach, Florida, all of which was being done in the ordinary course of Chem Seps' business and pursuant to its contractual obligations to those customers.

Hazen further averred: (1) the delivery of equipment sold by the defendant generated an account receivable or cash in an amount of greater value to defendant's creditors than the equipment itself; (2) the assets of defendant available in the State of Tennessee at all times when shipments were being made to Caterpillar Company and Container Corporation were more than sufficient to satisfy the claims of creditors.[1]

On October 15, 1982, previous to the submission of the affidavits of Hazen, Riggs, and the second affidavit of Campbell, a voluntary chapter 11 bankruptcy petition was filed by defendant Chem Seps. An application to remove the instant adversary proceeding to this court was filed by defendant on December 2, 1982. See 28 U.S. C.A. § 1478 (Supp.1982).

II

The fundamental issue before the court concerns the sufficiency of A.G. Campbell's affidavit to support the writ of attachment. If the affidavit was insufficient for its purpose, the court must determine whether the insufficiency is either a matter of form cured by corrective amendment or if defendant waived its right to object to the insufficiency by filing an answer to the merits of the complaint without objecting to the sufficiency of the affidavit.

■ Although the Tennessee attachment statutes are to be liberally construed as a general rule, a strict construction is afforded to the attachment statutes insofar as prescribed causes for which attachment may issue. *Willshire v. Frees,* 184 Tenn. 523, 529, 201 S.W.2d 675, 677–78 (1947). However, avoidance of an attachment on the basis of a mere technicality appears to be contrary to public policy in Tennessee.

1. In support of Hazen's assertion regarding the presence in Tennessee of assets having a value in excess of liabilities, a balance sheet for the period of June 1982, was attached to his second affidavit. This balance sheet reflects total assets and liabilities in the respective amounts of $8,267,696.82 and $7,448,168.65. However, as observed by plaintiff, this same balance sheet reflects trade payables in the amount of $2,258,778.74 and cash on hand of only $34,326.46.

*See McEwan, Gearinger, Banks & Hutcheson v. Lookout Mountain Hotel, Inc.,* 207 Tenn. 197, 204, 338 S.W.2d 601, 604 (1960).

■ Tenn.Code Ann. § 29–6–101 (1980) (*Grounds for attachment*) provides in relevant part:

Any person having a debt or demand due at the commencement of an action, or a plaintiff after action for any cause has been brought, and either before or after judgment, may sue out an attachment at law or in equity, against the property of a debtor or defendant in the following cases:

.   .   .   .   .

(2) Where he is about to remove, or has removed, himself or property from the state. . . .

It is unnecessary for a plaintiff to establish fraud or injury as a consequence of the removal to sustain an attachment on this ground. *Freidlander, Stick & Co. v. S. Pollock & Co.,* 45 Tenn. (5 Cold.) 490 (1868).

Tenn.Code Ann. § 29–6–113 (1980) (*Plaintiff's affidavit*) enacts:

In order to obtain an attachment, the plaintiff, his agent or attorney, shall make oath in writing, stating the nature and amount of the debt or demand, and that it is a just claim; or, if the action is for a tort, that the damages sued for are justly due the plaintiff or plaintiffs, as affiant believes, but that the true amount of such damages are not ascertained; and, also, that one or more of the causes enumerated in § 29–6–101 exists.

Paragraph 5 of the Campbell affidavit, *supra,* is susceptible to two quite different interpretations:

(1) Plaintiff is advised both that defendant Chem Seps is attempting to cease its operations in Knoxville and that a portion of its equipment is about to be removed from the State of Tennessee.

(2) Plaintiff is advised that defendant Chem Seps is attempting to cease its operations in Knoxville. A portion of defendant's equipment is about to be removed from Tennessee.

Under the first interpretation, averments regarding the cessation of defendant's business and the removal of its equipment are based on Campbell's being advised thereof by another party. The second interpretation is distinguished by the fact the affirmation concerning the imminent out-of-state removal of defendant's equipment is averred as a fact, implicitly based upon Campbell's personal knowledge. The distinction is significant.

*Nelson v. Fuld,* 89 Tenn. 466, 14 S.W. 1079 (1891), involved an attachment issued upon the following allegation: "[T]hat complainant is informed and believes that said Fuld & Co. have fraudulently disposed of, or are about fraudulently to dispose of, their property." *Id.* at 467, 14 S.W. at 1079. Since the allegation did not include an averment that the defendant company either had fraudulently disposed of its property or was about to do so, the attachment was quashed for insufficiency by the chancellor. The Supreme Court affirmed the chancellor's decision in a brief opinion, which included this observation:

The statement is only that the information had been had, and the belief exists . . . . Again, it may be true that a complainant is informed and believes that a defendant is about fraudulently to dispose of property, but it could not be sufficient to sustain an attachment to show that he had such information, and believed it without proof, and if proving the allegation made could not sustain the attachment, the allegation is insufficient.

*Nelson v. Fuld,* 89 Tenn. 466, 468, 14 S.W. 1079 (1891).

Applying the *Nelson* decision in the instant case, it is evident that proof of the verity of Campbell's averments under the first possible interpretation would be insufficient to establish grounds for the writ of attachment. Whether A.G. Campbell was in fact advised defendant was removing or about to remove its equipment out of the state is inconsequential insofar as whether defendant was in fact either removing or about to remove its equipment beyond the state's borders.

Assuming *arguendo* that the former of the two possible interpretations is adopted, may plaintiff correct the deficiency through its motion to clarify and to amend Campbell's first affidavit? Tenn.Code Ann. § 29–6–124 (1980) (*Correction of defects*) enacts:

> The attachment law shall be liberally construed, and the plaintiff, before or during trial, shall be permitted to amend any defect of form in the affidavit, bond, attachment, or other proceedings; and no attachment shall be dismissed for any defect in, or want of, bond, if the plaintiff, his agent, or attorney will substitute a sufficient bond.

This section permits the amendment of any defect in the form of the supporting affidavit, but it does not authorize an amendment affecting the substance of the affidavit. *Watt & Co. v. Carnes,* 51 Tenn. (4 Heisk.) 532 (1871).

*Keller v. Federal Bob Brannon Truck Co.,* 151 Tenn. 427, 269 S.W. 914 (1925), was an action in tort involving damage to plaintiff Keller's automobile as a consequence of the allegedly negligent operation of an automobile belonging to the defendant. Concurrently with the institution of Keller's suit, he sued out a writ of attachment which was levied against the automobile involved in the collision with his vehicle. Keller filed a declaration averring the proximate cause of the accident was "the negligent driving of defendant's automobile ... at a greater rate of speed than 20 miles per hour, in violation of chapter 173, Acts of 1905." *Keller,* 151 Tenn. at 429–30, 269 S.W. at 915. A motion to quash the attachment was filed by the defendant on the basis the attachment did not reflect defendant's automobile was run in excess of 20 mph on a public thoroughfare at the time of the accident and that, even if it were, it is not alleged defendant's automobile was willfully operated in excess of 20 mph. Defendant's motion was overruled temporarily. During the trial of this case, Keller moved to amend the writ of attachment to insert the very language defendant had contended was fatally omitted from the attachment writ. The trial court permitted the amend-

ment. On appeal, the Tennessee Supreme Court, interpreting a predecessor of Tenn. Code Ann. § 29–6–124 (1980), decided allowance of the amendment was improper because the amendment went to the substance of the attachment writ, not merely to the form.

In *New York Casualty Co. v. Lawson,* 160 Tenn. 329, 24 S.W.2d 881 (1930), Lawson caused an attachment to be issued based on an affidavit which merely included allegations of an indebtedness owing to him for injury to his automobile caused by another automobile. When a motion was filed to quash the attachment on several grounds, including the absence of any statement in Lawson's affidavit of grounds for issuance of the attachment, Lawson sought and obtained permission to amend the attachment. Thereupon, Lawson amended to allege "that at the time of the injury the Buick car was being willfully run in excess of 30 miles per hour upon the highway, and that the defendant to the attachment was about secretly to move his property out of the county." *New York Casualty Co.,* 160 Tenn. at 333, 24 S.W.2d at 882. The Tennessee Supreme Court had no difficulty finding no cause for attachment had been stated in Lawson's initial affidavit. Citing *Keller,* the court also found the amendment should not have been allowed since amendments are only allowable to cure defects of form, not to substitute a valid affidavit for one which is void.

*McEwan, Gearinger, Banks & Hutcheson v. Lookout Mountain Hotel, Inc.,* 207 Tenn. 197, 338 S.W.2d 601 (1960), involved an attachment of funds in a Tennessee bank account of the debtor, a Georgia corporation. The theory behind the attachment was the nonresidency of the debtor. The bond which the plaintiff creditor was required to furnish was signed: "Southern Broadcasters, Inc., Prin. By: James L. Banks, Trustee." The debtor filed a plea in abatement alleging the creditor and the debtor were both Georgia corporations and that the attachment therefore violated Tenn.Code Ann. § 29–6–109 (1980) (former-

ly Tenn.Code Ann. § 23–609).[2] The plea in abatement was sustained by the sessions court, but an appeal to the circuit court was prosecuted by the creditor. The debtor renewed its previous plea of abatement in the circuit court. The creditor responded by alleging it was a domestic partnership of attorneys, not a foreign corporation. Further, the creditor filed a motion to correct the patently "clerical mistake" in the attachment bond to identify the partnership of attorneys as the principal, instead of Southern Broadcasters, Inc., also a Georgia corporation. The circuit court, finding that the action involved a dispute between two Georgia corporations and that the assignment by Southern Broadcasters, Inc. of its claim against the debtor to the Tennessee partnership of attorneys was a sham to procure an attachment, denied the motion to correct and dismissed the attachment. On appeal, the state supreme court noted former Tenn.Code Ann. § 23–624, presently codified as Tenn.Code Ann. § 29–6–124 (1980), clearly evidenced "the public policy of the State that attachments of non-residents of this State have been liberalized to such an extent that they [members of the state legislature] don't want non-residents to get away on a mere technicality or technical defect." *Lookout Mountain Hotel, Inc.,* 207 Tenn. at 204, 338 S.W.2d at 604. The court held the motion to correct should have been permitted, offering the following explanation:

> We are doing this for the simple reason that the cause should be tried on its merits and the correction of the errors, mistakes and negligence of those preparing this pleading, when the true facts are made to appear prior to the time it is finally disposed of below, should have been allowed and the parties to try the case on the true facts of the situation,

rather than on some mere technical error. This was the purpose of Section 23–624, T.C.A.

*Lookout Mountain Hotel, Inc.,* 207 Tenn. at 205, 338 S.W.2d at 605.

■ Plaintiff's motion to amend Campbell's supporting affidavit preceded the conclusion of the trial of this action, as required by Tenn.Code Ann. § 29–6–124 (1980). The only question is whether the requested amendment is a matter of form or substance. Plaintiff's request to amend merely involves the insertion of a punctuation mark (a semicolon) to clarify Campbell's averment concerning the imminency of the removal out of the state of defendant's equipment. This request is supported by A.G. Campbell's sworn affidavit that his former supporting affidavit "was for the purpose of affirmatively stating ... that defendant was about to remove its equipment from the State." Plaintiff's motion to amend is clearly more limited in scope than the amendments sought in both *Keller* and *New York Casualty Co.* Given the susceptibility of the averment in question to two different interpretations, the desirability of the resolution of disputes upon the merits as opposed to technicalities, *Lookout Mountain Hotel, Inc.,* and the credibility the court believes due the averments of A.G. Campbell in his November 1, 1982, affidavit, the motion to amend Campbell's June 18, 1982, supporting affidavit should be granted.[3]

■ The question remains whether the amount of defendant's property either being removed or about to be removed was sufficient to support plaintiff's attachment. The removal of an insignificant amount of a debtor's property will not support an attachment. *Freidlander, Stick & Co. v. S. Pollock & Co.,* 45 Tenn. (5 Cold.) 490 (1868).

---

**2.** Tenn.Code Ann. § 29–6–109 (1980) enacts:

> *Parties residents of same foreign state.* —When the debtor and creditor, tort-claimant and tort-feasor, are both nonresidents of this state, and residents of the same state, the creditor or claimant shall not have attachment against the property of his debtor, or the tort-defendant unless he swear that the property of the latter has been fraudu-

lently removed to this state to evade the process of law in the state of their domicile or residence.

**3.** The court had the opportunity to observe the testimony of A.G. Campbell during the course of the two-day trial of this adversary proceeding and believes his sworn affidavit is entitled to credibility.

It is not possible to define by precise words, the amount of property removed, or about to be removed, which will bring the debtors within the scope of the statute. It need not be all his property, nor will a comparative little suffice. It must be an amount, of substantial consequence in reference to the ability of his estate to bear honestly, the withdrawal of the amount away from his liability, in the domestic court, to his creditors.

*Friedlander,* 45 Tenn. (5 Cold.) at 493–94.

The creditors in *J.H. Wrompelmeir & Co. v. Moses,* 62 Tenn. 467 (1874), held three unmatured notes of the debtor in the amount of approximately $900.00. An attachment bill was filed wherein it was alleged the debtor was about to remove his stock of goods, being all of his worldly goods, outside of the State of Tennessee. The attachment bill was dismissed by the chancellor because of a failure to prove the creditors' allegations. On appeal, the Tennessee Supreme Court observed the record reflected the debtor owned unencumbered real estate situated in Nashville, Tennessee, and having a value of $10,000.00. The court held that creditors were not entitled to an attachment under the circumstances even if the debtor were about to remove his entire stock of goods from the state. *Moses,* 62 Tenn. at 476.

■ The affidavit of Leon Riggs clearly supports plaintiff's assertion that property of the defendant was about to be removed beyond the borders of the State of Tennessee when plaintiff sought a writ of attachment. As previously noted, Riggs, former vice-president for operations for the defendant, avers that equipment of a value of $50,000.00 was either shipped on June 18, 1982, or was about to be shipped, to Indiana, and that equipment of a value of $200,000.00 was about to be shipped to Florida on June 25, 1982, when Riggs left the employ of defendant Chem Seps.

Defendant does not deny its ownership of this equipment. Instead, defendant contends the attachment was wrongful because the amount of its property removed, assuming *arguendo* a removal occurred, fails to satisfy the *Freidlander* test. Defendant submits its assets substantially exceeded its liabilities at or about the date of the attachment, as evidenced by the June 1982 balance sheet attached to Hazen's affidavit of February 25, 1983, reflecting total assets and liabilities in the respective amounts of $8,267,696.82 and $7,448,168.65. However, the bankruptcy schedules of the debtor filed some four months later, on October 28, 1982, reflect liabilities of $5,389,993.40 and assets having a value of only $3,991,509.04. Yet, the schedules further reflect:

(1) repayments on loans and installment purchases between June 1, 1982, and September 30, 1982, total only $50,068.76;[4]

(2) no transfer was made other than in the ordinary course of business during the year preceding the date of the bankruptcy filing;

(3) no fire or theft losses were experienced during the year preceding the date of the filing of the bankruptcy petition.

Under these circumstances it is difficult to understand how the debtor's financial condition declined in a period of four months from a positive equity of $819,528.17 to a negative equity of $1,398,484.36. The figures in the June 1982 balance sheet are rejected by the court as unreliable. Considering the information furnished in the defendant's bankruptcy schedules, the court finds an amount of defendant's property of substantial consequence was either being removed or about to be removed when plaintiff sought the attachment writ, when tested against defendant's ability (or inability) to pay plaintiff's debt.

■ Defendant Chem Seps also insists the equipment it shipped out of the state during June 1982 represented its work product shipped pursuant to contractual obligation in the ordinary course of its business. Defendant further insists the ship-

---

4. This figure includes $12,568.76 in payments for the defendant's lease of a telephone system. The schedules do not reflect any repayments on either loans or installment purchases after September 30, 1982.

ments out of the state create accounts receivable of greater value to its creditors than the equipment shipped. The following query is raised by the defendant:

Can it be that the law of this state is that a business with out-of-state customers which is performing its contractual obligations to those customers in the ordinary course of its business is subjected to prejudgment confiscation of its property simply at the bidding of one of its creditors?

Reply Memorandum of Defendant in Support of its Motion to Quash Ancillary Attachment at 9.

Initially, the court observes that an attaching creditor must furnish a bond, payable to the defendant, providing that, upon failure to prosecute the attachment with effect, the creditor will pay the defendant all costs adjudged against him and all damages sustained as a consequence of any wrongful attachment. Tenn.Code Ann. § 29–6–115 (1980). The amount of the bond required is prescribed by Tenn.Code Ann. § 29–6–116 (1980). These statutes obviously reduce the probability of any frivolous attachment.

In answer to defendant's query, the court observes Tenn.Code Ann. § 29–6–101(2) (1980) makes no exception based on the character of the debtor's property either removed or about to be removed. The creation of an account receivable certainly does not assure subsequent, voluntary payment by the seller to his unpaid creditors. Instead, in interstate sales, it may become necessary for the Tennessee claimant or creditor to prosecute his claim in a foreign forum, remotely situated in some cases, to obtain payment of his debt. This court declines to fashion a judicial exception to Tenn.Code Ann. § 29–6–101(2) (1980) immunizing the removal out of the state of a debtor's inventory property.

Grounds for attachment pursuant to Tenn.Code Ann. § 29–6–101(2) (1980) did exist when plaintiff filed its petition for an ancillary writ of attachment on June 21, 1982, against defendant Chem Seps.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.

