IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JUNE 3, 2002 Session

## ARLIE L. BINGHAM v. JOHN W. DOLES, ET AL.

**Direct Appeal from the Chancery Court for Hardin County**
**No. 5807; The Honorable Ron E. Harmon, Chancellor**

---

**No. W2002-00104-COA-R3-CV - Filed October 17, 2002**

---

This appeal arises from a boundary line dispute. The plaintiff filed suit against the defendant, an adjacent land owner, alleging that a proposed addition to the defendant's home would encroach onto the plaintiff's property. The trial court ruled that defendant had gained title to the disputed property under the doctrines of adverse possession and title by acquiescence. The plaintiff appealed challenging the court's ruling on adverse possession. For the following reasons, we affirm the decision of the trial court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

J. Gilbert Parrish, Jr., Savannah, TN, for Appellant

Dennis W. Plunk, Savannah, TN, for Appellee

## OPINION

### Facts and Procedural History

Arlie L. Bingham ("Mr. Bingham") and John W. and Cynthia K. Doles ("the Doles") are owners of adjacent tracts of property in Hardin County, Tennessee that border the Tennessee River. This dispute involves the common boundary line dividing the parties' property.

There are three tracts of property relevant to this appeal. These three tracts were initially owned by common grantors, Jesse and Johnnie Sue Mayfield ("the Mayfields"). The Mayfields

conveyed one of the tracts to Mr. Bingham by warranty deed dated July 2, 1986.[1]  Mr. Bingham recorded this deed three days later on July 5, 1986.  The recorded deed contains the following description:

> Beginning at an iron pin in the Southwest right of way of Dorothy Ann Campsite Road, the same being Fly's Northeast corner and the Northern, most Northwest corner of the tract herein described; thence with the Southwest and West right of way of Dorothy Ann Campsite Road as follows: South 36 deg. 30' East 36 feet to a nail & cap, South 24 deg. 21' West 37 feet to a 10' hackberry; thence with the South margin of an old abandoned road, passing an iron pin at 124 feet, in all plus or minus 174 feet to a pool contour of Tennessee River; thence South 19 deg. 45' West with said contour 76.7 feet; thence North 67 deg. 54' 02.8" West with a fence, passing the centerline of a gravel road at plus or minus 157 feet, in all plus or minus 265 feet to White Oak Creek; thence up said creek North 12 deg. 30' East 37 feet; thence North 56 deg. 30' East with Fly's Southeast boundary line, passing an iron pin at 20 feet, in all 114 feet to the beginning, containing 0.51 acre gross.  Subject to road easement.

In two subsequent transactions, the Mayfields conveyed the remaining tracts to Billy Wayne Faulkner ("Mr. Faulkner").  In the first transaction, what would later become known as the "First Tract" was conveyed to Mr. Faulkner by warranty deed dated September 22, 1993.  Approximately three years later, what would become known as the "Second Tract" was conveyed to Mr. Faulkner by quitclaim deed dated April 19, 1996 and recorded the same day.

The quitclaim deed conveying the Second tract to Mr. Faulkner contains the following description:

> Beginning at a point in the eastern margin of the Dorothy Ann Campsite Road, this point being the northwest corner of the Arlie Bingham lot as described in Deed Book 123, page 299; runs thence in a northern direction with the eastern right of way margin of said road 39 feet to a stake, this point being the southwest corner of the lot already owned by Billy Wayne Faulkner; runs thence with the south boundary line of Faulkner 135 feet to the Tennessee River; runs thence with the contour of the Tennessee River in a southern direction 41 feet; runs thence in a western direction with the northern boundary of Arlie Bingham lot mentioned above 139 feet to the point of beginning, and being a portion of Tract 2 as described in a deed of general warranty from Russell Morrow, et al., to Johnnie Sue Mayfield, dated November 10, 1976, of record in the Register's Office of Hardin County, Tennessee, in Deed Book 86, page 82.  It is the intention of the Grantors to convey all of their remainder interest in the lot known as Tract 2 of said deed, after the conveyance to Arlie L.

---

[1] The dates of conveyance and the recording dates for the various tracts provided in the record differ somewhat from those provided in the parties' briefs.  Any differences, however, are immaterial to this appeal.

Bingham as shown in deed recorded in Deed Book 123, page 299, Register's Office, Hardin County, Tennessee.

Soon after the conveyance of the Second Tract to Mr. Faulkner, Mr. Faulkner conveyed both the First Tract and the Second Tract to the Doles by a single warranty deed dated May 3, 1996, which was subsequently recorded. The description given in the Doles' warranty deed for the Second Tract is identical to the description in Mr. Faulkner's quitclaim deed except for the last sentence. Instead of the last sentence as shown above, the Doles' deed stated, "This is the identical real estate conveyed to Billy Wayne Faulkner by quitclaim deed dated April 19, 1996, of record in the Register's Office, Hardin County, Tennessee, in Deed Book 173, page 105."

For several years after the conveyance of the First Tract and the Second Tract to the Doles, the parties had no disputes as to their common boundary lines. In the early part of 1999, however, the Doles decided to build an addition onto their house. The addition was to be located on the southern border of the Second Tract. In response to the proposed addition, Mr. Bingham asserted his belief that the addition would encroach onto the northern border of his property and filed suit against the Doles seeking injunctive relief and a judgment declaring him to be the owner in fee simple of the disputed property. Mr. Bingham's complaint alleged that the Doles were encroaching on his property by approximately eighteen feet at the northeast corner and 4.37 feet on the southeast corner.

The dispute eventually proceeded to trial. To support their respective positions, both parties had surveys performed on the tracts. Mr. Bingham called to the stand Henry Williams ("Mr. Williams"), a surveyor who had surveyed both Bingham's tract and the Second Tract owned by the Doles. Mr. Williams testified that he could physically layout the dimensions called for in each of the deeds on the property, but that doing so resulted in an overlap in the respective boundaries. Mr. Williams further testified that this disputed area basically consisted of an old abandoned road.

The Doles called William Ashe ("Mr. Ashe") as an expert witness. Mr. Ashe agreed that the tracts, as described in the parties' deeds, had overlapping boundaries. Similarly, Mr. Ashe stated that both deeds included the southern portion of an abandoned road that is now merely a depression in the earth and barely detectable.

Following further testimony by the parties and additional witnesses, the court issued its ruling. The trial court first determined that the property lines as described in the deeds were accurately reflected in Mr. Ashe's survey and that an overlap in the descriptions did in fact exist. Next, the court determined that Mr. Bingham's legal title to the disputed property was superior to that of the Doles due to the fact that Mr. Bingham recorded his deed first. The court, however, concluded that the disputed property had been acquiesced over the years by Mr. Bingham and that the Doles and their predecessor in interest, Mr. Faulkner, had adversely possessed it. Accordingly, the court reformed the deeds, granting the Doles a portion of the disputed property. Mr. Bingham filed a timely notice of appeal and now contests the trial court's decision.

**Issues**

Mr. Bingham has raised the following three issues for our review:

1.        Whether the court erred by reforming the boundary lines of the parties' property after determining that Mr. Bingham's legal title to the disputed property was superior to that of the Doles due to the deeds' relative recording dates;

2.        Whether the court erred by reforming the deed even though Mr. Bingham was an alleged bona fide purchaser and no mutual mistake in the deeds existed; and

3.        Whether the trial court erred in finding that the Doles and Mr. Faulkner, the predecessor in interest, adversely possessed the disputed property.

The Doles have also raised several issues for our review. They are as follows:

1.        Whether the trial court correctly established the boundary under the doctrine of boundaries by acquiescence; and

2.        Whether the evidence is sufficient to affirm the trial court.

**Standard of Review**

When a civil action is heard by a trial judge sitting without a jury, our review of the matter is *de novo* on the record, accompanied by a presumption of correctness of the findings below. Foster v. Bue, 749 S.W.2d 736, 741 (Tenn. 1988); T.R.A.P. 13(d). We may not reverse the findings of fact made by the trial judge unless they are contrary to the preponderance of the evidence. Jahn v. Jahn, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996). This presumption of correctness, however, does not attach to the trial judge's legal determinations or the trial court's conclusions that are based on undisputed facts. NCNB Nat'l Bank v. Thrailkill, 856 S.W.2d 150, 153 (Tenn. Ct. App. 1993).

**Legal Superiority of Mr. Bingham's Deed**

With regard to his first issue, Mr. Bingham points to three reasons why the court erred in reforming the deeds after determining that his legal title to the disputed property was superior to that of the Doles. First, Mr. Bingham simply argues that because the court found that his legal title to the property was superior, the court should have granted him the disputed property. We disagree with this reasoning. Mr. Bingham apparently has not taken into account the remainder of the court's ruling. The court based its decision on the doctrines of adverse possession and title by acquiescence. Under these doctrines, a bald assertion of greater legal title does not constitute a proper defense.

Second, Mr. Bingham argues that because his deed was recorded first, the court erred by failing to grant him the disputed property. Again, however, Mr. Bingham has apparently overlooked the reasoning behind the trial court's decision. If we were to agree with Mr. Bingham on this issue

based on his reasoning, we would effectively overrule all equitable and statutory doctrines available under Tennessee law to gain title to land.

Finally, Mr. Bingham argues that he is entitled to the disputed property merely because he acquired his interest by warranty deed whereas the Doles received their interest in the property from Faulkner, who held a quitclaim deed. In support of this argument, Mr. Bingham points us to *Black's Law Dictionary*, which states that quitclaim deeds fail to contain any warranties or guarantees. We disagree, however, with Mr. Bingham's reasoning. We first note that section 66-5-103 of the Tennessee Code recognizes the validity of quitclaim deeds as a proper form of conveyance. Further, for the same reasons as above, Mr. Bingham again has failed to consider the reasoning of the trial court and the true issues of this case. Accordingly, we hold that all three of Mr. Bingham's arguments with respect to this issue are without merit.

### Mr. Bingham's Alleged Status as a Bona Fide Purchaser and the Lack of a Mutual Mistake

In his second issue, Mr. Bingham makes two distinct arguments. First, Mr. Bingham argues that because he is as a bona fide purchaser of the disputed land and took without notice of a mistake in his deed, the court should not have granted the land to the Doles. In support of his argument, Mr. Bingham cites this Court's recent decision in Wallace v. Chase, No. W1999-01987-COA-R3-CV, 2001 Tenn. App. LEXIS 263 (Tenn. Ct. App. Apr.17, 2001). In Wallace, we held,

> A court of chancery in Tennessee has the power to reform and correct errors in deeds produced by fraud or mistake. See Barnes v. Gregory, 38 Tenn. (1 Head) 230, 236 (1858). To be the subject of reformation, a mistake in a deed must have been mutual or there must have been a unilateral mistake coupled with fraud by the other party, such that the deed does not embody the actual intention of the parties. See Anderson v. Howard, 18 Tenn. App. 169, 74 S.W.2d 387, 389-90 (Tenn. Ct. App. 1934); Pittsburg Lumber Co. v. Shell, 136 Tenn. 466, 189 S.W. 879, 880 (Tenn. 1916). Reformation may be granted against the original parties, their privies, those claiming under them with notice, and third persons who will suffer no prejudice thereby. See 76 C.J.S. *Reformation of Instruments* § 54 (1994). As a general rule, however, a court of chancery may not reform a deed against a bona fide purchaser for value without notice. See Gibson v. Flynn, 1988 Tenn. App. LEXIS 713, No. 88-120- II, 1988 WL 119257, at *3 (Tenn. Ct. App. Nov. 10, 1988) (citing Brier Hill Collieries v. H. Pile, 4 Tenn. App. 468, 478 (1926)).

Wallace, 2001 Tenn. App. LEXIS 263, at *9-10. Based on Wallace, Mr. Bingham argues that because he was a bona fide purchaser for value and took the land without notice of any mistake in the deed, the chancery court lacked the authority to reform his deed.

Our review of the record again, however, reveals that the chancery court's ruling was not based on its authority to reform mistaken deeds. Instead, the court held that under the doctrines of

adverse possession and title by acquiescence, the Doles were the rightful owners of the disputed property. Accordingly, Wallace is not applicable to the present case.

Similarly, in his second argument, Mr. Bingham argues that the court erred in allowing parol evidence to controvert the unambiguous description given in his deed. While we agree with Mr. Bingham that parol evidence should not be "offered to vary the terms of a written instrument that is clear and unambiguous on its face," this rule of law is not applicable to this case. Thus, with regard to this issue, Mr. Bingham again fails to address the ruling of the trial court. Accordingly, we hold that these arguments lack merit.

## Adverse Possession

With regard to Mr. Bingham's third issue, he argues that the court improperly relied upon the doctrine of adverse possession in declaring the Doles to be the rightful owners of the disputed property. Specifically, Bingham argues that the Doles did not possess the disputed property for the requisite time and that the Doles' character of possession failed to rise to the level necessary to satisfy the requirements of adverse possession.

In Tennessee, the doctrine of adverse possession is recognized in sections 28-2-101 to -105 of the Tennessee Code. Pursuant to these statutes, when proceeding under color of title, a claimant or someone in privity of estate with the claimant must have adversely possessed the property in dispute for at least seven years. See TENN. CODE ANN. § 28-2-101 to -105 (2000).

Turning to the case *sub judice*, the Mayfields gave up color of title to the disputed property to Mr. Bingham in 1986. Adverse color of title to the disputed property did not arise again until 1996 when the Mayfields transferred the Second Tract to Mr. Faulkner. Hence, the period for adverse possession under color of title could not have begun to accrue until 1996. Because Mr. Bingham filed the present suit in 1999, the requisite time period for adverse possession under color of title, seven years, could not have been met. Accordingly, Mr. Bingham has overcome the trial court's presumption of correctness on appeal with regard to the duration of possession and we hold that the court erred in determining that the requirements for adverse possession were met.

## Doctrine of Title by Acquiescence

As noted above, the court based its decision on both adverse possession and the doctrine of title by acquiescence. Mr. Bingham, however, has failed to cite any error concerning the court's ruling on the doctrine of title by acquiescence. Thus, under Rule 13 of the Rules of Appellate Procedure, this Court is not required to reach this issue. However, in the interest of justice and because the Doles have offered an analysis of the doctrine, we have taken the liberty to review the doctrine's requirements as well as the facts in the record concerning its application.

As noted by the Doles, this Court recognized the validity of the doctrine of title by acquiescence in Duren v. Spears,1990 Tenn. App. LEXIS 333 (Tenn. Ct. App. May 10, 1990). In Duren, we held:

> Boundaries between adjoining land owners can be established by acquiescence. Roane County v. Anderson County, 89 Tenn. 259, 14 S.W. 1079 (1890); Gilchrist v. McGee, 17 Tenn. (9 Yerg.) 455 (1836). The general rules as stated in 11 C.J.S., *Boundaries*, concerning acquiescence and its effect are as follows:
>
> In order to establish a boundary by acquiescence, it is not necessary that the acquiescence should be manifested by a conventional agreement, but recognition and acquiescence must be mutual, and both parties must have knowledge of the existence of a line as a boundary line. . . .
>
> The question as to what constitutes acquiescence must be decided from the particular facts of the case, and no absolute rule can be applied to every case. Generally it depends on the acts or declarations of the parties interested, on inferences or presumptions from their conduct, or on their silence. . . .Failure to object to an encroachment with knowledge that the owner thereof claims to that line may amount to acquiescence establishing the line as a boundary. . . .
>
> Recognition of, and acquiescence in, a line as the true boundary line of one's land, not induced by mistake, and continued through a considerable period of time, affords strong, if not conclusive, evidence that the line so recognized is in fact the true line, and it supports an inference or presumption that there has been an agreement fixing it as the true line. Where recognition and acquiescence have continued for the period of time prescribed by statutes concerning acquiescence or for the period required by statutes of limitations for acquisition of title by adverse possession, the presumption that the line is in fact the true line or that there has been an agreement fixing it as the true line becomes conclusive, and the line as acquiesced in is conclusively established as the boundary. As established it will control courses and distances called for in the title deeds or grants, and the parties need not rely on paper title.
>
> 11 C.J.S., *Boundaries*, §§ 79 and 81 (1973).

Duren,1990 Tenn. App. LEXIS 333, at *5-7.

Applying these requirements to the case *sub judice*, we find that the preponderance of the evidence fails to overcome the lower court's determinations of fact with regard to this doctrine. Accordingly, we hold that the court did not err by determining the Doles to be the owners of the disputed property under the doctrine of title by acquiescence.

## Conclusion

Based on the foregoing conclusions, we hereby affirm the decision of the trial court. Costs on appeal are assessed against the Appellant, Arlie L. Bingham, and his surety for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE