ANDERSON et al. v. HOWARD et ux.—74 S. W. (2d) 387.

Eastern Section.   March 9, 1934.

Petition for Certiorari Denied by Supreme Court, June 23, 1934.

J. A. Walker and J. W. Stone, both of Harriman, for appellants.
Joel H. Anderson, of Knoxville, for appellees.

KETCHUM, J. In this case the widow and the executor of the will of Henry M. Winslow, deceased, filed an ejectment bill against the defendants, Howard and wife, to recover possession of a house and lot in the town of Harriman, which they had conveyed to Winslow, on March 18, 1931. The property had originally been conveyed by Winslow to the Howards on August 24, 1918, for the sum of $1,200, payable in monthly installments of $15; and this purchase money was secured by a mortgage. or deed of trust on the property. The Howards paid $500 or $600 on the purchase money, but for four or five years prior to the filing of the bill they paid nothing.

In the meantime, on April 17, 1929, Winslow, who resided in Sarasota, Florida, gave the complainant, W. C. Anderson, a general power of attorney to handle and look after all his property and business affairs in the state of Tennessee; and in 1930 Anderson took up with the defendant J. S. Howard the matter of reconveying the property to Winslow, in the place of foreclosing the purchase-money mortgage. Howard claimed he had an agreement with Winslow whereby he and his wife might have the possession and use of the property so long as they, or either of them, might live.

On September 9, 1930, Anderson wrote to the defendant J. S. Howard that, since he had been unable to make any payments on the property for three years or more, and since the note was getting old, he had better deed the property back to Mr. Winslow; "and the next time I can see you I will discuss with you some plan or arrangement under which you can continue to occupy the property if agreeable to you. Mr. Williams, who is in the office of Mr. Winslow, will prepare the deed for yourself and wife to sign and acknowledge, and I will thank you to call at the office in the next two or three days and execute and acknowledge the same."

Williams did prepare a deed which was executed by Howard and wife, reconveying the property to Winslow, on March 18, 1931, and this deed was filed for registration on March 21, 1931.

The defendants in their answer admit the purchase of the property from Winslow, and the reconveyance to him by deed of March 18, 1931; but they aver that, in consideration of assistance and labor rendered him, the said Winslow agreed to waive the payment of the balance of the purchase money, and agreed that defendants might live upon the property the remainder of their natural lives; and agreed that they might reconvey the property to Winslow subject to a life estate, which should be expressly reserved to them; and that, in view of this agreement, the said Winslow and the complainants were estopped to deny that the defendants had a life interest in the property.

And thereafter, by leave of court, the said defendants filed their answer as a cross-bill, and averred that, since the filing of their answer, they had discovered that the deed on record purported to

convey said property to said Winslow in fee, but that it was the intention of said Winslow to take a deed conveying the property to him subject to a life estate in the defendants, and that this intention was communicated to Williams, the draftsman of the deed, who was an employee of Winslow; that it was the intention of the Howards to reserve a life interest in the property, and that they consulted with their attorneys, John A. Walker and D. O. Harris, as to how the deed should be prepared; and they aver that it was the clear intention of all parties that this provision should be inserted in the deed; that the deed as prepared does not express the clear intention of the parties and "is a mistake of the parties, having been drafted by a draftsman not familiar with the practice of making deeds under certain conditions;" and that this court of chancery should reform the deed so as to make it conform to the intention of the parties, and the prayer was that this might be done.

And by a subsequent amendment to their cross-bill the cross-complainants further averred that they instructed the said Williams to incorporate in the deed a provision reserving a life estate in said property to them, and that he assured them that the deed as presented to them for their signature contained such a reservation, and that, believing this to be true, they signed and acknowledged it; but that the said Williams, either innocently or on purpose, abused their confidence, and took undue and inequitable advantage of them, and thereby procured their signatures to said deed.

The complainants, in their answer to the cross-bill, deny that there was any understanding, agreement, or intention on the part of Henry M. Winslow to grant or concede to cross-complainant a life interest in said property, or that cross-complainant gave any consideration whatever for such an agreement or contract, and denied that there was any consideration to support such an agreement or contract.

Upon the taking of the proof, the executor produced and exhibited the original deed executed by the Howards. There is written on this deed below the signatures and below the certificate of acknowledgment the following:

"Mr. Henry M. Winslow agrees to let Mr. and Mrs. J. S. Howard live in the above described property as long as both shall live, but it is to revert to him at their death."

This statement is not dated or signed, and was not copied on the record as a part of the deed when it was registered.

On the trial of the case, the complainants were permitted to amend their bill so as to pray in the alternative that, if for any reason it should be held that said deed was void, or that there was no meeting of the minds of the parties in said transaction, the complainants be permitted to foreclose their lien on said property for the unpaid purchase money and for taxes paid thereon by them and by the said Winslow, and for a sale of said property, etc.

The chancellor decreed that the deed was void because there was no meeting of the minds of the parties, and no fair understanding between them as to the terms of said deed; and declared a lien on said property for the unpaid balance of purchase money with interest thereon, and for taxes paid by the said Winslow and complainants; and ordered a sale of the property to satisfy said lien; and from this decree the defendants have appealed and assign errors here.

■ The first and second assignments complain of the action of the chancellor in excluding the testimony of J. A. Walker and D. O. Harris, attorneys, as to advice given by them to the defendant J. S. Howard with reference to the provision to be incorporated in the deed so as to reserve to defendants a life estate in the property. It is not claimed that these conversations were had in the presence of either Mr. Winslow or of Anderson, his attorney in fact; and the fact that defendant sought the advice of counsel is immaterial to any issue in the suit, and the evidence was properly excluded. These assignments will therefore be overruled.

■ ■ The third assignment of error is that the court erred in permitting the complainants to amend their bill so as to pray in the alternative for a foreclosure of the purchase-money lien, in the event the court should hold that the deed was void. The contention is that the bill is predicated upon the idea that the deed was valid, and that it sets out no facts that would warrant the foreclosure of the purchase-money lien, and it is said that the deed was accepted in full satisfaction of the purchase-money indebtedness, and that therefore the complainants had no lien to be foreclosed. The fallacy in this argument is that under the cross-bill of the defendants the court held that the deed was void because there was no meeting of the minds of the parties; it was a mere scrap of paper, and constituted no consideration for the cancellation of the purchase-money indebtedness, and the status quo ante therefore had to be restored.

The defendants were in no way prejudiced by the fact that the amendment was not made until the hearing. No new facts were alleged, and the amendment did not necessitate the taking of any further proof.

Mr. Gibson, in his Suits in Chancery, at section 430, says:

"It may be stated generally, however, that a large liberty of amendment is allowed the complainant. Courts are made for complainants, and the law gives them all reasonable opportunities so to amend and perfect their bills as to be able to bring before the Court, in proper form, the particular matters they desire to submit to its adjudication. . . .

"The bill may even be amended at the hearing when (1) merits manifestly appear in the record, and (2) no laches or bad faith, taints the conduct of the complainant, and (3) when such an amendment will not operate harshly, or unjustly, upon the defendant, or

take him by surprise, or cut him off from a valid defense he might have made.''

This assignment is not well made, and will be overruled.

The fourth assignment is that the court erred in holding that there was no meeting of the minds of the parties, and that the deed was therefore void. This is discussed in the briefs in connection with the sixth and seventh assignments, which are:

Sixth, that the court should have held that the deed was a valid deed reserving to Howard and wife a life estate in the property; and,

Seventh, that the court erred in holding that Williams was not authorized to write into the deed the clause which he did, reserving a life estate in Howard and wife.

With reference to the fourth assignment, it is said that there was no prayer that the deed be held to be void because there was no meeting of the minds of the parties with reference to it. It is true that the specific prayer of the cross-bill is that the deed be reformed so as to incorporate therein a clause reserving to the Howards a life estate. This relief could be granted only upon the ground of fraud or mutual mistake, which should be positively set up in the pleadings and proven by clear, cogent, and convincing proof. In Pittsburg Lumber Company v. Shell, 136 Tenn., 466, 470, 189 S. W., 879, it is said that, to be the subject of correction, a mistake must have been mutual, or there must have been a mistake of one party influenced by fraud of the other.

The proof is wholly insufficient to warrant the reformation of the deed upon the ground of either fraud or mutual mistake. The cross-complainant, J. S. Howard, testifies to an agreement with Mr. Winslow to the effect that he and his wife should reconvey the property subject to a life estate in themselves. This testimony was objected to by the executor under section 9780 of the Code, and the court properly sustained the objection.

Howard also testifies to a conversation with Anderson and Williams at Mr. Winslow's office, prior to the execution of the deed, in which Anderson agreed that it was a part of the plan that Howard and his wife might remain on the property as long as they lived; but Anderson swears that he did not make any such agreement with him, and that he had no recollection of having had any conversation with him in Mr. Winslow's office at any time. Williams was not called as a witness to this conversation.

The only other evidence on the subject is in a letter purporting to have been signed by Henry W. Winslow, by S. W. Williams, addressed and delivered to Howard along with the deed. This letter is as follows:

''In signing the enclosed deed to Mr. Henry M. Winslow, I am not asking you to move from the property, nor shall I ask you to move. You and Mrs. Howard can live there as long as you wish; but the

deed is just to insure Mr. Winslow's receiving the property at the death of you and your wife.

"[Signed]   Henry M. Winslow, by S. W. W."

The proof shows clearly that Williams was merely a clerk and bookkeeper for Mr. Winslow, and that he had no authority to bind Mr. Winslow by such an agreement with reference to his real estate. He had no power of attorney from Winslow and no instructions from Anderson to grant such a concession.   In this connection it is significant that cross-complainants did not call Williams as a witness to show what authority he had to write such a letter.

It is well settled that a deed, regular on its face, and properly signed, acknowledged, and recorded, will be reformed only upon the most satisfactory proof that it does not express the real intention of the parties; that is, what is known as clear, cogent, and convincing proof, or clear and indisputable proof.

Mr. Justice Story, in his Equity Jurisprudence, vol. 1, sec. 152, states the rule as follows: "The case must be made out by proofs entirely satisfactory; for if the proofs are doubtful and unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief upon the ground that the written paper ought to be treated as a full and correct expression of the intent, until the contrary is established beyond reasonable controversy."

This statement of the rule is approved by our courts in Talley v. Courtney, 48 Tenn. (1 Heisk.), 715, 719, and Mayberry v. Nichol (Tenn. Ch. App.), 39 S. W., 881.

And in Cromwell v. Winchester, 39 Tenn. (2 Head), 389, it is said that: "If, by mistake, the writing contains less or more, or something different from the intent of the parties, and this be clearly made out by proof entirely satisfactory, a Court of Equity will reform the contract so as to make it conform to such intent.   .   .   . The presumption always is strong, that a writing contains the whole contract, and sets it forth accurately; but, if it can be clearly and indisputably shown, that by fraud or mistake it does not, the presumption fails, and it will be reformed."   See, also, Whitaker v. Moore, 14 Tenn. App., 204, 211.

The proof in this case is not of the clear, cogent, convincing, and satisfactory character, which would warrant the reformation of the deed in accordance with the specific prayer of the cross-bill; but there was proof that there was no real meeting of the minds of the parties as to the reservation of the life estate, and the chancellor was well warranted in setting aside the deed on this ground, under the prayer for general relief.

As to the sixth assignment, it would be straining construction beyond all reasonable limits to hold that the clause relied upon as reserving a life estate in the grantors, written below the signatures and the certificate of acknowledgment, undated and unsigned, con-

stituted a part of the deed. Such a construction would open wide the door to the perpetration of fraud.

The fourth, sixth, and seventh assignments will be overruled.

This leaves the first assignment to be disposed of; that is, that there is no evidence to sustain the decree for the balance of the purchase-money due, and declaring a lien on the property, and a sale thereof, to satisfy the decree. The contention made under this assignment is the same as that discussed under the third assignment, viz., that the purchase-money indebtedness had been cancelled by the execution of the deed. We do not deem it necessary to consider it again here.

The further contention is made that the indebtedness was barred and the lien extinguished by the statutes of limitations of six and ten years. These statutes of limitations are not pleaded, and the defense is therefore not available. Moreover, it is clear that the ten-year statute (Code 1932, sec. 8590) had not run. The note was dated August 24, 1918, and was payable in monthly installments for eighty months, the last being payable on May 24, 1925. The bill was filed in January, 1932. So the ten-year statute clearly had not run. This assignment will also be overruled.

All the assignments having been overruled, it results that the decree of the chancellor will be in all respects affirmed at the cost of appellants.

Senter and Anderson, JJ., concur.