**In re Hugh MOSLEY, Gladys L. Mosley, Debtors.**

**Bankruptcy No. 18500338.**

United States Bankruptcy Court, W.D. Kentucky.

Dec. 2, 1985.

Henry Dickinson, Glasgow, Ky., trustee.

Steve Hixson, Bowling Green, Ky., for Citizens Nat. Bank.

Ray B. White, Bowling Green, Ky., for debtors.

## MEMORANDUM OPINION

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

In this case under the "strong-arm clause" of the Bankruptcy Code, 11 U.S.C. § 544, a 29-acre tract of land is the subject of a dispute between the bankruptcy trustee and a bank which mistakenly released its mortgage just before the landowners' bankruptcy. Trustee Henry Dickinson, arguing with the righteous persuasion to be expected from one who has only recently been promoted from thief to saint,[1] prevails beyond peradventure. The case is a textbook example of creditor's rights lost, through simple inattention, to the sweeping avoidance powers of the trustee.

The facts are stipulated. About two weeks before Hugh and Gladys Mosley filed bankruptcy, they sold two tracts of land and retained a third, the 29-acre parcel here in question. To facilitate the sale and itself be paid, Citizens National Bank of Bowling Green executed a release of its blanket mortgage covering all three tracts. Proper banking practice would have dictated only a partial release, with the bank retaining its mortgage on the 29-acre property still owned by the Mosleys. The action was the product of ordinary oversight or inadvertence on the part of a bank officer unfamiliar with the Mosley loan file.

Upon this error pounced the vigilant trustee, brandishing the shield and sword of Section 544(a)(3), which grants him the power of avoidance enjoyed by:

"a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists".

■ Otherwise stated, the trustee is regarded as an innocent transferee without notice as of the date of bankruptcy, able to exercise all of the defenses such a purchaser would have under applicable nonbankruptcy law against prior transferees of the property in question. Any imperfection or defect of title renders prior claimants vulnerable to the pristine demand of the BFP, thus so with the trustee. The statute makes clear that it is not necessary for such a purchaser to actually exist for the trustee to exercise such powers; his status is not only derivative but purely hypothetical.

■ In his memorandum the trustee paints a portrait of himself as a hypothetical good-faith purchaser with such surreal clarity that for a moment the court thought he actually *had* personally bought the

---

1. In a recent controversy between lien claimants over fully secured property we characterized this same trustee as "that lowest of creatures in the law of personal property, the gratuitous involuntary bailee". We amended that observation in a footnote to observe that "Actually the gratuitous involuntary bailee is the second-lowest ranking person claiming rights in personal property. He ranks just above the thief." *In re McKinney,* 45 B.R. 790, 792 (Bkrtcy.W.D. Ky.1985). In his memorandum in the present case Trustee Dickinson with characteristic humor specifically sheds the offensive title.

property. The trustee asserts (and we assume this part of the memorandum *not* to be imaginary) that he employed independent counsel who ran the title to the 29-acre tract and filed a clean report. Upon receiving that report the trustee, under insistent demand by the bank on its lien claim, suggested to opposing counsel that the bank "take a flying leap",[2] a recommendation which, whether or not aerodynamically sound, did little to advance the peaceable resolution of the matter. Discussions ceased and the present legal action was joined.

Confronted by an intimidating statute in the hands of an agent not overly shy, the bank retreats to equitable lien theory, pleading in effect for the conscience of the court to override statutory law. In this regard the case is not conceptually distinguishable from another recent, unreported case from this court. In *In re Schwartz*, 56 B.R. 2 (Bkrtcy.W.D.Ky.1985), we held for the trustee under § 544 against a bank holding an unrecorded lien against an automobile and arguing equitable lien theory. Our reasoning there bears repeating here:

> The new Section 544, which went even further than prior law in strengthening the trustee's avoidance power with respect to improperly perfected or unperfected security interests, has been the subject of such an abundance of authority, virtually all favorable to the trustee, that we need not recite it here. *See* Chapter 544, Collier on Bankruptcy (15th Ed.1984).

> With all deference to the bank's plea that "equity regards as done that which ought to have been done", we know of no reported case in which that hoary maxim of equity has come out anything but second best to the truly awesome statutory avoidance powers of the bankruptcy trustee in repelling claims of equitable liens.

More need not be said. We hold in this clearest of cases that the trustee's powers under § 544 negate the equitable lien claim of the bank, and will so provide in an implementing order. In closing we extend our compliments to the trustee upon his return to the ranks of the righteous, and to his opposing counsel for the worthy effort, however unsuccessful, to cure bank error through creative lawyering.

---

**2.** *Trustee's Memorandum of Sept. 20, 1985,* at p. 2. The exact nature of the recommended acrobatic exercise is not further described. It cannot pretend to so lofty a status as the "giant leap for mankind" alluded to by moonwalker Neil Armstrong; the object of the leap more likely is the legendary Rolling Doughnut.