**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**


In Re: ED L. MAHAFFEY; In Re:
VIOLET L. MAHAFFEY,
<u>Debtors.</u>

No. 95-2411

BRENDA ALLEN SATTERFIELD; ED L.
MAHAFFEY; VIOLET L. MAHAFFEY,
<u>Plaintiffs-Appellants,</u>

v.

WAYNE SIGMON, Trustee,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Western District of North Carolina, at Shelby.
Lacy H. Thornburg, District Judge.
(CA-93-98-4, CA-94-22-4, BK-93-40009)

Argued: March 7, 1996

Decided: July 10, 1996

Before MURNAGHAN and ERVIN, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Vacated and remanded by unpublished opinion. Senior Judge Butzner
wrote the opinion, in which Judge Murnaghan and Judge Ervin
joined.

_____

**COUNSEL**

**ARGUED:** Judith C. Fraser, Waynesville, North Carolina, for Appellants. P. Wagne Sigmon, GRAY, LAYTON, DRUM, KERSH, SOLOMON, SIGMON & FURR, P.A., Gastonia, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

BUTZNER, Senior Circuit Judge:

Ed and Violet Mahaffey, an elderly couple, conveyed their mobile home to their daughter, Brenda Satterfield, two months before filing for bankruptcy under Chapter 7. Although the deed on its face conveyed a fee simple interest in the property, the Mahaffeys and their daughter agreed that Violet Mahaffey retained the right to live on the property for the rest of her life. The bankruptcy court held this to be a fraudulent transfer, and it denied the Mahaffeys' claim for a homestead exemption in the property. The district court affirmed.

We remand the case with directions to the bankruptcy or district court (collectively "the court") to decide, in the exercise of its equity power, whether to reform the deed to Mrs. Satterfield. Such reformation could give effect to the intention of the parties by recognizing the reservation of a life estate in the property. The trustee can avoid the transfer of the remainder pursuant to the constructive fraud provisions of the bankruptcy code.

I

By way of preamble, we note that it appeared to the district court that the Mahaffeys did not act in bad faith or with fraudulent intent. Moreover, if the Mahaffeys had been advised to retain their property,

2

they could have claimed a homestead exemption. The trustee told the bankruptcy court, "it is a sad situation." But quite properly he pressed the rights of the bankruptcy estate. Affirming the bankruptcy court, the district court concluded its opinion by writing:

> Application of the law to the facts here presented forces this Court to the conclusion that Appellants [the Mahaffeys] have no relief available to them and therefore must lose their home. This case is compelling because of the ages and health considerations of the Appellants. Indeed, the Appellants' need for their home certainly far outweighs the need of creditors for a proportionate distribution of the sum in question. Nonetheless, when Appellants chose to seek the relief of the bankruptcy provisions, they also stepped into the realm of bankruptcy law. This Court is bound to uphold that law unless and until a higher court advises that the interpretation rendered is inaccurate.

(footnote omitted).

II

Ed and Violet Mahaffey live in a mobile home in Polk County, North Carolina. The Mahaffeys have had trouble making their monthly mortgage payments. Violet Mahaffey is sickly, taking several medications, often costing between $200 and $300 per month, and suffering from depression and a heart condition. She testified that her husband is an invalid. Violet Mahaffey earns $274 per month. Her husband does not earn a salary.

Brenda Allen Satterfield, the Mahaffeys' daughter, helped her parents with the monthly mortgage payments over a period of several years. On November 16, 1992, the Mahaffeys transferred their mobile home and two lots of land located in Polk County to their daughter. The November 16 deed did not contain any words limiting the estate that was transferred. Yet both parties understood that Violet Mahaffey would live in the home for the remainder of her life. Violet Mahaffey stated: "I assigned the place to her because she said I could have it to live there as long as I lived." Mrs. Satterfield echoed this senti-

3

ment: "[T]he deal was that I would make the payments for her and help her and she would live there, you know, the rest of her life."

The Mahaffeys filed a Chapter 7 bankruptcy petition on January 13, 1993. At that time, they had personal property totaling $2,550 and debts equaling $29,905.49. The real property that they transferred was appraised during the bankruptcy proceedings at $34,000. Tryon Federal Savings and Loan had a mortgage on the property in the amount of $20,069.58. In the petition, the Mahaffeys claimed that if the trustee recaptured the real property, they were entitled to a homestead exemption under North Carolina law in the amount of the difference between the market value of the home and the lien on the property.

The trustee objected to the Mahaffeys' election of an exemption in the property. On April 1, 1993, the trustee filed an adversary proceeding against Mrs. Satterfield, seeking a return of the property. By a deed recorded on April 19, 1993, before any hearing in the adversary proceeding, Brenda Satterfield, together with her husband, conveyed the property back to the Mahaffeys to avoid the perception that they were engaging in a fraudulent transfer. Mrs. Satterfield explained:

> [W]hen we assigned the property back to my mother, I was so upset because we didn't want it to appear that I had accepted this property just to protect it from bankruptcy at all. And so I wanted that transferred back to prove--because I have never had dealings like this before and I didn't want anybody to think that we were trying to be dishonest at all.

The bankruptcy court held that the trustee could avoid the transfer from the Mahaffeys to Mrs. Satterfield for lack of adequate consideration pursuant to 11 U.S.C. § 548(a)(2). With respect to the conveyance from the Satterfields back to the Mahaffeys, the bankruptcy court allowed the trustee recovery under § 550(a), which permits the trustee to recover property from the "initial transferee" or "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a)(1),(2). The bankruptcy court also held that the Mahaffeys could not exempt the property under 11 U.S.C. § 522(g), which allows exemptions for property the trustee recovers if the transfer "was not a voluntary transfer" of the property. The district court affirmed.

4

The Mahaffeys rely on the "no harm, no foul" principle enunciated in In re Treiber, 92 B.R. 930, 932 (Bankr. N.D. Okla. 1988). Under this approach, a transfer of property that could have been exempted cannot constitute a fraudulent conveyance since the property would be immune from the claims of creditors if it were not conveyed. As a majority of courts that have considered the issue have noted, however, the "no harm, no foul" approach seemed more appropriate under the old Bankruptcy Act, in which exempt property was not part of the bankruptcy estate. See, e.g., In re Wickstrom, 113 B.R. 339, 350 (Bankr. W.D. Mich. 1990) (citing cases). Under the new Bankruptcy Code, in contrast, all property, including potentially exempt property, is part of the estate until the debtor claims an exemption. See 11 U.S.C. § 541(a). Consequently, a transfer of potentially exempt property could harm creditors. In the case before us, both the bankruptcy and district courts declined to follow In re Treiber. We agree, and we find no error in their interpretation of the code. Because of the difference between the old and the new bankruptcy codes, we do not rely on the "no harm, no foul" approach as a basis for our decision.

Generally, federal appellate courts do not consider issues that the parties have not raised either below or on appeal. See Singleton v. Wulff, 428 U.S. 106, 120 (1976). Yet in "exceptional circumstances," to prevent injustice, we may raise issues sua sponte. Id. at 121; Washington Gas Light Co. v. Virginia Electric and Power Co., 438 F.2d 248, 250-51 (4th Cir. 1971). In this case, we have enough facts before us about the parties' intentions that we can, to prevent injustice, remand the case for the court to consider reformation of the deed of transfer.

III

Bankruptcy courts are courts of equity. Katchen v. Landy, 382 U.S. 323, 336 (1966). As courts of equity, they have the power to reform written instruments, including deeds, to effectuate the intent of the parties. See generally American Employers Ins. Co. v. St. Paul Fire & Marine Ins. Co., Ltd., 594 F.2d 973, 977 (4th Cir. 1979) (insurance policy); In re Cleveland, 53 B.R. 814, 817 (Bankr. E.D. Va. 1985) (deed). North Carolina courts are empowered to reform deeds. Light v. Equitable Life Assurance Society of the United States, 286 S.E.2d 868, 872 (N.C. App. 1988). Federal courts look to state law in defin-

5

ing property interests. <u>Butner v. United States</u>, 440 U.S. 48, 55 (1979).

<u>Durham v. Creech</u>, 231 S.E.2d 163 (N.C. Ct. App. 1977), dealt with a situation similar to the one we consider. Grantors, by reason of mistake, conveyed real property in fee simple though they intended to reserve a life estate in the property. The court ordered reformation of the conveyance to reserve a life estate to the grantors. For additional examples of reformation of a fee simple to a life estate, see Restatement of Restitution § 49 & illus. 4 (1936) (gratuitous transactions).

North Carolina courts do not allow reformation, however, if the rights of a bona fide purchaser would be prejudiced. <u>Hice v. Hi-Mil, Inc.</u>, 301 N.C. 647, 653, 273 S.E.2d 268, 272 (1981). The Bankruptcy Code grants to trustees the "rights and powers" of bona fide purchasers of real property. 11 U.S.C. § 544(a)(3). The Code does not automatically make the trustee a bona fide purchaser; rather, it extends to the trustee the powers possessed by such figures. <u>In re Wilkinson</u>, 186 B.R. 186, 191 (Bankr. D. Md. 1995).

To determine bona fide status, bankruptcy courts apply state law. <u>See In re Morse</u>, 30 B.R. 52, 54 (Bankr. 1st Cir. 1983); David G. Epstein, Steve H. Nickles, James J. White, 2 Bankruptcy § 6-61, at 129 (1992). Although a trustee's actual knowledge will not preclude bona fide status, constructive notice, as determined by state law, will "defeat the trustee's rights under § 544(a)(3) just as such notice would defeat the rights of any bona fide purchaser of real property." Collier Bankruptcy Manual ¶ 544.02, at 544-11, 12 (Lawrence P. King ed., 3d ed. 1996).

Under North Carolina law, a bona fide purchaser is one who "pays valuable consideration and buys without actual or constructive notice of any claims on title." <u>Creech</u>, 231 S.E.2d at 167. Constructive notice includes information found in the chain of title of the property and facts obtainable through "such inquiry as a cautious and prudent [person] would make." <u>New Hanover County v. Holmes</u>, 15 N.C. App. 548, 550, 190 S.E.2d 396, 397 (1972). For the sale of real property, such an inquiry would encompass an examination of the property to ensure that no party was in possession. <u>See Metropolitan Life</u>

6

Ins. Co. v. Dial, 209 N.C. 339, 350-51, 183 S.E. 609, 615-16 (1936). Dial relied on the longstanding rule in North Carolina that possession constitutes constructive notice. It quoted Heyer v. Beatty, 83 N.C. 244, 248 (1879), in which the North Carolina Supreme Court explained:

> Possession is suggestive of title or right in the possessor, and a prudent man should and would inquire into such apparent right before trading with another; and, if he do not, it is but just to the rights of the party in possession to hold the purchaser as affected with notice of the equities in his favor . . . .

See also Morehead v. Harris, 262 N.C. 330, 339, 137 S.E.2d 174, 183 (1964) (dictum).

To reiterate, under 11 U.S.C. § 544(a), a court need not be concerned with the trustee's actual knowledge regarding the possession of real estate. The proper inquiry is whether, under North Carolina law, a hypothetical purchaser of real estate would have attained the status of a bona fide purchaser.

If the deed is reformed, the reserved life estate would not be included in the property that the trustee seeks to avoid, because, having been reserved, it was never fraudulently conveyed. In that event, the court should consider the status of Ed Mahaffey. Did the parties intend that he have a life estate in the mobile home? If so, would the estate be measured by his life or Violet's life? It seems unlikely that the parties intended him to have no interest in the home, but this is a possibility.

The remainder interest is a different story. Section 548(a) outlines two types of transactions that constitute fraud. The first addresses actual fraud--where the debtor makes a conveyance with a subjective intent that evidences fraud. Section 548(a)(1) allows the trustee to avoid transfers that the debtor makes "with actual intent to hinder, delay, or defraud any entity to which the debtor was. . . indebted . . . ." As the district court noted, and as the testimony of the parties reveals, the Mahaffeys did not perpetrate actual fraud.

7

The second type of fraud is "constructive fraud." This species of fraud allows the trustee to

> avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . received less than a reasonably equivalent value in exchange for such transfer or obligation; and . . . was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation . . . .". 11 U.S.C. § 548(a)(2)(A),(2)(B)(i)).

The transfer of the remainder took place on November 16, 1992, less than one year before the Mahaffeys filed for bankruptcy on January 13, 1993. The Mahaffeys received less than reasonably equivalent value for the remainder. Satterfield promised to make mortgage payments in the future, but an "unperformed promise to furnish support to the debtor" does not constitute value. 11 U.S.C. § 548(d)(2)(A). Finally, the Mahaffeys were insolvent on the date of the transfer; their debts exceeded their assets.

The transfer of the remainder constitutes a fraudulent transaction which the trustee can avoid. Despite the Satterfields' beneficial intentions, the transfer back to the Mahaffeys does not remedy the finding of constructive fraud. The trustee may recover from either the "initial transferee," Mrs. Satterfield, or from the "immediate . . . transferee of [the] initial transferee," the Mahaffeys. 11 U.S.C. § 550(a)(1),(2). The Mahaffeys cannot protect the remainder from the trustee pursuant to 11 U.S.C. § 522(g) since they voluntarily transferred the property.

IV

The next question concerns homestead exemptions. North Carolina has opted out of the exemptions listed in the federal code. N.C. Gen. Stat. § 1C-1601(f) (1995). Consideration of the applicable homestead exemption in this case therefore depends solely on North Carolina law. See Cheeseman v. Nachman, 656 F.2d 60, 62 (4th Cir. 1981).

8

Section 1C-1601 of the North Carolina Code delineates the property exempt from the bankrupt's estate. Of relevance to this case, § 1C-1601(a)(1) exempts "[t]he debtor's aggregate interest, not to exceed ten thousand dollars ($10,000) in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence . . . ." North Carolina law requires continued ownership and use of the property to claim an exemption. In re Love, 42 B.R. 317, 319 (E.D.N.C. 1984). If the exempt residence ceases to be used as a residence or is no longer owned by the debtor, then the homestead exemption does not apply. Id. The effect of the exemption is to render such property "free of the enforcement of the claims of creditors for indebtedness incurred before or after the exempt property is set aside . . . for so long as the debtor owns it." N.C. Gen. Stat. § 1C-1604(a). The exemption scheme is designed to give debtors a "fresh start"--a chance to retain enough possessions to"begin anew." Nachman, 656 F.2d at 63-64. For this reason, exemptions are to be liberally construed. See, e.g., In re Hollar, 184 B.R. 25, 28 (Bankr. M.D.N.C. 1995).

By its terms, § 1C-1601(a)(1) does not confine exemptions to holders of a fee simple interest in real estate. "The debtor's aggregate interest" is broad enough to include a life estate. A life estate entitles its holder to "exclusive possession and control" during its existence. 1 American Law of Property: A Treatise on the Law of Property in the United States § 216, at 129 (1952). The owner of a life estate has --with minor exceptions, such as the need to avoid"waste"--as complete a present ownership in the property as the holder of a fee simple interest in property. If Violet alone has a life estate, she can claim a $10,000 exemption in the value of her life estate. If Ed has an estate in the property, he, too, is entitled to claim a $10,000 exemption.

Tryon Federal Savings and Loan Association's $20,070 mortgage is not affected by the exemption. The mortgage is a secured claim, which is not discharged by bankruptcy. See David G. Epstein, Steve H. Nickles, James J. White, 2 Bankruptcy § 7-10, at 300 (1992). Although certain liens can be limited to the extent they conflict with exemptions, mortgages do not fall into this category. See 11 U.S.C. § 522(c); Fitzgerald v. Davis, 729 F.2d 306 (4th Cir. 1984). Nor would the remainder be affected by the homestead exemption.

9

If the deed is not reformed, the district court may re-enter its previous order. The judgment is vacated, and the case is remanded for further proceedings consistent with this opinion. Each side should bear his or her costs.

VACATED AND REMANDED