In re Allen Eugene MILLER and Brenda Gale Miller, Debtors.

First American National Bank, Plaintiff,

v.

Allen Eugene Miller and Brenda Gale Miller; Transamerica Financial Services, Inc. and Steve McClintock, Trustee; Bristol Tennessee Electric System and R. Michael Browder, Trustee; and American General Finance, Inc., Defendants,

and

G. Wayne Walls, Trustee, Intervening Defendant.

Bankruptcy No. 98–20011.
Adversary No. 98–2010.

United States Bankruptcy Court, E.D. Tennessee.

Nov. 24, 1999.

O. Taylor Pickard, Jr., Wilson, Worley & Gamble, P.C., Kingsport, TN, Margaret B. Fugate, Anderson, Fugate, Givens & Belisle, Johnson City, TN, for First American National Bank.

Charles L. Moffatt IV, Bristol, TN, for Allen and Brenda Miller.

David S. Bunn, Bunn & Bunn, P.C., Bristol, VA, for Bristol Electric System and R. Michael Browder, Trustee.

Linda V. Bailey, Robert M. Bailey, Bailey, Roberts & Bailey, PLLC, Knoxville, TN, for G. Wayne Walls, Chapter 7 Trustee.

### MEMORANDUM

MARCIA PHILLIPS PARSONS, Bankruptcy Judge.

This adversary proceeding arises out of two foreclosure sales of the debtors' residence conducted by First American National Bank ("First American"), the first which took place during the debtors' previous chapter 13 case in violation of the automatic stay and the second which took place prior to the filing of the current

bankruptcy case but after First American had quitclaimed its interest in the property to the debtors. In its motion for summary judgment which is presently before the court, First American seeks a determination that its interest in the debtors' residence is superior to that of the debtors and the chapter 7 trustee. A junior lienholder, Bristol Tennessee Electric System, and the trustee under its deed of trust, R. Michael Browder (collectively, "Bristol Electric")[1] have also moved for summary judgment alleging that it has a first lien position on the debtors' residence since First American released its deed of trust by delivery of the quitclaim deed and, therefore, First American had no interest upon which to foreclose when it held its second foreclosure sale. The chapter 7 trustee, G. Wayne Walls (the "trustee"), has also moved for summary judgment on the basis that his rights and powers under 11 U.S.C. § 544(a) provide him with a superior position in the residence. The court agrees and for the following reasons, the trustee's motion will be granted and the motions of First American and Bristol Electric will be denied. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A)(K) and (O).

### I.

On or about October 31, 1995, First American loaned the debtors $52,000.00 to purchase their home located at 1365 Big Hollow Road, Blountville, Tennessee. In turn, the debtors executed a promissory note in that amount payable to First American, and a deed of trust was recorded on November 1, 1995. In May 1997 when the debtors failed to make their monthly payments under the note, First American began foreclosure proceedings. A foreclosure sale was held on July 14, 1997, and First American was the successful bidder. A trustee's deed transferring the fee title of the real property to First American was thereafter recorded on July 21, 1997. At the time of the foreclosure sale, two junior deeds of trust were of record, one in favor of Bristol Electric and the second in favor of TransAmerica Financial Services, Inc., whose interest was at some point assigned to American General Finance, Inc.[2]

Prior to that sale and unbeknownst to First American, the debtors had filed a petition under chapter 13 on July 1, 1997, commencing case no. 97–21633. Because the debtors did not file the accompanying schedules, statement of financial affairs and plan until August 5, 1997, notice of the case's commencement was not mailed to creditors and parties in interest such as First American until August 15, 1997. Although the debtors were apparently aware of the impending foreclosure sale at the time of their bankruptcy filing, neither they nor their bankruptcy counsel made any effort to personally advise First American of the bankruptcy prior to the July 14 sale.

On July 17, 1997, immediately after the foreclosure sale, O. Taylor Pickard, Esq.,

---

1. Although Bristol Electric alternatively moved to dismiss for failure to state a claim pursuant to Fed. R. Bankr.P. 7012(b), which incorporates Fed.R.Civ.P. 12(b)(6), the court will only rule on the motion for summary judgment since matters outside the pleadings are being considered.

2. TransAmerica Financial Services, Inc., the trustee under its deed of trust, Steve McClintock, and American General Finance, Inc.

have not made an appearance in this action. On January 26, 1999, a hearing was held on First American's motion for default judgment against American General Finance, Inc. and Steve McClintock, Trustee, filed on December 31, 1998. The motion was granted and First American's counsel was directed to tender an order. However, no order was ever tendered for entry by the court.

the attorney for First American, wrote a letter to the debtors advising them that First American had purchased the property at foreclosure and demanding that the debtors vacate the real property. In response, debtors' counsel faxed a letter to Mr. Pickard on August 2, 1997, informing First American of the debtors' bankruptcy filing. It appears undisputed that this was First American's first notice or knowledge of the bankruptcy.

Fearing that it had violated the automatic stay and in an attempt to reverse the foreclosure sale, First American, upon the advice of counsel, executed a quitclaim deed, "releas[ing], quitclaim[ing] and convey[ing] .... all of the right, title, claim and interest" which First American had in the debtors' real property back to the debtors. This deed along with a check for the recording fee was mailed by First American's attorney to debtors' counsel on September 16, 1997.

Thereafter, on October 24, 1997, the debtors' bankruptcy case was dismissed upon the debtors' failure to make the required chapter 13 plan payments. After the dismissal, the debtors recorded the quitclaim deed on November 12, 1997. During the pendency of that case, the court was never made aware of the foreclosure sale or the attempt by the parties to undo that sale.

Notwithstanding the execution of the quitclaim deed, First American once again began foreclosure proceedings against the debtors. On December 9, 1997, the second foreclosure sale was held and First American was again the successful bidder. That same day, a trustee's deed to First American for the real property was recorded.

On January 6, 1998, almost a month later, the debtors, still in possession of their home, filed a second chapter 13 petition initiating the bankruptcy case underlying this adversary proceeding. In their schedules, the debtors listed First American as a secured creditor in the amount of $52,288.52, secured by a mortgage on the debtors' home valued at $52,000.00. In their chapter 13 plan, the debtors proposed pursuant to 11 U.S.C. § 1322(b)(5) to cure the default under their promissory note to First American and make maintenance payments. In response, the chapter 13 trustee objected and First American commenced the present adversary proceeding. In order to resolve the objection, the parties agreed that the plan payments to First American would be held in escrow by the chapter 13 trustee pending the outcome of this adversary proceeding. The debtors' chapter 13 plan was confirmed on April 9, 1998.

Thereafter, First American and Bristol Electric filed their present motions for summary judgment. On June 10, 1999, while these motions were pending, the debtors filed a notice of conversion of their chapter 13 case to chapter 7. The case was converted to chapter 7 by order entered June 14, 1999, and on August 19, 1999, the court granted the trustee's motion to intervene in this adversary proceeding. The trustee then moved for summary judgment.

First American's motion for summary judgment is supported by two affidavits, that of Darl J. Broadwater, the First American officer who executed the quitclaim deed, and O. Taylor Pickard, Esq., the attorney for First American who conducted the two foreclosure sales. Mr. Broadwater states in his affidavit that his only intent in executing the quitclaim deed was to "avoid being in violation of the stay and to put all parties back into the position they were in prior to the foreclosure." He states that he "did not intend by this deed to make a gift to the [debtors] or to release the deed of trust." Similarly, Mr. Pickard states in his affidavit that upon

receiving notice of the debtors' bankruptcy filing, he "considered what steps First American should take to avoid being in violation of the automatic stay and minimize the consequences of having violated the stay." Upon "determining that the foreclosure sale was void," he advised Mr. Broadwater that "all the parties could be put back in the position they were in prior to the foreclosure by having first American quitclaim the property to the [debtors] and that this would minimize any problems First American might have in any action brought for of [sic] the stay."

First American requests in its motion for summary judgment that the court (1) declare the first foreclosure sale void because it violated the automatic stay, void the quitclaim deed for mistake, and leave the second trustee's deed in place; or (2) declare the first foreclosure sale to be valid and void the quitclaim deed and the second trustee's deed. In the alternative, First American asks that if the court voids both foreclosure sales, that it also void the quitclaim deed for mistake in order to place the parties in the same positions that they were in prior to the first foreclosure. First American notes that it received no consideration for the quitclaim deed and that unless the court sets aside the deed, creditors will be unjustly enriched to the detriment of First American.

In Bristol Electric's motion for summary judgment,[3] it agrees with First American that the first foreclosure sale was void and should be set aside. Bristol Electric denies, however, that the quitclaim deed should be invalidated, asserting that this court is without jurisdiction to do so ab-

sent a showing of fraud, undue influence or duress. Bristol Electric maintains that it holds the first priority lien on the real property since First American released its secured interest upon delivery of the quitclaim deed.

The trustee contends in his motion for summary judgment that pursuant to 11 U.S.C. §§ 506 and 544 the bankruptcy estate holds the real property free and clear of any liens that First American, Bristol Electric and American General Finance might have previously held. The trustee asserts that neither First American nor Bristol Electric has standing to set aside the first foreclosure sale and that the effect of the sale was to extinguish the liens of all junior lienholders. The trustee maintains that First American's interest in the property was released by its execution of the quitclaim deed and that the portions of Messrs. Broadwater's and Pickard's affidavits which address why the quitclaim deed was executed are inadmissible because they violate the parol evidence rule. Lastly, the trustee argues that under Tennessee law, a court should not set aside a release and reinstate a mortgage where the rights of third parties have intervened. The third parties that would be prejudiced by a reinstatement, according to the trustee, are the unsecured creditors of this bankruptcy estate.

## II.

Fed.R.Civ.P. 56, as incorporated by Fed. R. Bankr.P. 7056, mandates the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and

---

**3.** In conjunction with its motion for summary judgment, Bristol Electric requested that the court allow an additional affirmative defense that "the quitclaim deed was executed prior to the filing of this bankruptcy petition and that there is no showing that same amounted to a fraud on the creditors or the debtors[']

estate and therefore, this Court is without jurisdiction to render the quitclaim deed null and void." The court deems the motion to be granted and will consider this defense in connection with Bristol Electric's motion for summary judgment.

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the inference to be drawn from the underlying facts contained in the record must be viewed in a light most favorable to the party opposing the motion. *See Schilling v. Jackson Oil Co. (In re Transport Assoc., Inc.)*, 171 B.R. 232, 234 (Bankr.W.D.Ky.1994)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989). "[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... by affidavits or ... otherwise ..., must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e). *See Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986).

### III.

The court turns first to First American's motion for summary judgment. In order for First American to prevail under any scenario, the court must set aside the quitclaim deed. As a result of the quitclaim deed, First American effected a release pursuant to the deed's express terms of "all of the right, title, claim and interest" which it "has or may have" in the debtors' real property. "A modern 'quitclaim deed' is lineally descended from a release, and conveys whatever interest the grantor has." *Joyner v. Johnson (In re Johnson)*, 187 B.R. 598, 602 (E.D.Tenn.1994)(quoting *McQuiddy Printing Co. v. Hirsig*, 23 Tenn.App. 434, 134 S.W.2d 197, 204–05 (1939)). Thus, the second foreclosure sale had no legal effect whatsoever since at the time of the sale, First American had no interest upon which to foreclose. First American does not dispute that the quitclaim deed had the legal effect of releasing its interest in the real property, but contends that it did not intend this effect, and asks the court to, in its words, "correct the mistake made by the plaintiff in his execution and delivery of the quitclaim deed."

■ In essence, First American is asking that the court reform the deed to reflect the parties' true intentions. Notwithstanding Bristol Electric's argument that this court is without jurisdiction over such an action, bankruptcy courts, as courts of equity, "have the power to reform written instruments, including deeds, to effectuate the intent of the parties." *Satterfield v. Sigmon (In re Mahaffey)*, 1996 WL 383922 at *3 (4th Cir. July 10, 1996). In doing so, federal courts look to state law. *Id.* (citing *Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)).

■ Under Tennessee law, "[t]o be the subject of correction, a mistake in an instrument must have been mutual or there must have been a mistake of one party induced by the fraud of the other." *Kozy v. Werle*, 902 S.W.2d 404, 411 (Tenn. App.1995) (citing *Pierce v. Flynn*, 656 S.W.2d 42 (Tenn.App.1983)). "If, by mistake, the writing contains less or more, or something different from the intent of the parties, and this be clearly made out by proof entirely satisfactory, a Court of Equity will reform the contract so as to make it conform to such intent." *Anderson v. Howard*, 18 Tenn.App. 169, 74 S.W.2d 387 (1934) (quoting *Cromwell v. Winchester*, 39 Tenn. (2 Head) 389, 1859 WL 3305 (1859)). *See also* TENN.CODE ANN. § 66–5–107(a) ("Whenever an error or mistake is made in any deed of conveyance ... the person liable to injury by such error or mistake

may prefer a petition ... setting forth the nature of the mistake or error...."); TENN.CODE ANN. § 66–5–107(e) ("[W]henever it shall appear evident ... that there was an error or mistake committed in drawing the deed of conveyance, the court shall order the same to be rectified, so as to comport with the intention of the parties....").

Citing *In re Johnson*, the trustee asserts in this proceeding that First American may not put forth evidence as to its true intent in executing the quitclaim deed because parol evidence may not contradict or vary the terms of a contract. In *Johnson*, the district court held that the bankruptcy court erred in concluding that a party's execution of a quitclaim deed did not release her security interest, based on the party's testimony as to her intent in executing the deed. *In re Johnson*, 187 B.R. at 602–603. The district court noted that in allowing the party to offer this testimony, the bankruptcy court permitted her to contradict the deed made by her in violation of the parol evidence rule, which prohibits direct contradiction of the express terms of a written agreement. *Id.*

■ *Johnson*, however, is distinguishable from the facts of the present case. *Johnson* stands for the proposition that one party's unilateral intent may not be offered to contradict the terms of an agreement or deed. In the case of mutual mistake which is asserted in the present case, parol evidence is admissible. *See GRW Enterprises, Inc. v. Davis*, 797 S.W.2d 606, 611 (Tenn.App.1990) ("[T]he parol evidence rule does not prevent using extraneous evidence to prove that a written contract does not correctly embody the parties' agreement...."); *McMillin v. Great S. Corp.*, 63 Tenn.App. 732, 480 S.W.2d 152, 155 (1972) (parol evidence may be used to contradict or vary the terms of a written instrument upon a showing of fraud or mutual mistake).

First American asserts that the release of its interest was a mistake which did not reflect the true intention of the parties. First American's statement of intent is supported by the affidavits of Messrs. Broadwater and Pickard. The debtors deny in their answer to the complaint that First American did not intend to release its lien when it executed the quitclaim deed, but they have not responded to First American's summary judgment motion. Thus, Messrs. Broadwater's and Pickard's affidavits stand unrefuted.

Furthermore, the conduct of the parties after the execution and delivery of the quitclaim deed is consistent with a belief by both parties that First American still held a lien on the debtors' residence. First American conducted another foreclosure sale when the debtors failed to recommence their mortgage payments after their first chapter 13 case was dismissed. The debtors in turn listed First American as a secured creditor in their schedules and chapter 13 plan when they filed for bankruptcy relief on their second and current occasion. There is simply no evidence that either the debtors or First American considered the real property to be free of First American's lien.

Based on the foregoing evidence and the law in Tennessee regarding mutual mistake, it would appear that but for the debtors' current bankruptcy filing, a court of equity would reform the deed in question to preserve First American's secured position. *See Alston v. Porter*, 31 Tenn. App. 628, 219 S.W.2d 745, 747 (1949) (court reformed deed which set forth descriptions of two tracts of property since understanding of parties was that only one tract was to be sold); *Hamilton Nat'l Bank of Chattanooga v. Duncan*, 23 Tenn.App. 329, 132 S.W.2d 353, 354 (1939) (absent intervening

rights of innocent third parties, reformation permitted where creditor had executed release of note by mistake); *Anderson,* 74 S.W.2d at 390 (court set aside deed reserving life estate based upon evidence that there was no real meeting of the minds of the parties); *City Bank & Trust Co. v. Webb,* 1997 WL 44391 at *2 (Tenn. App. Feb.5, 1997) (court of appeals affirmed setting aside of foreclosure sale by chancery court where through mutual mistake bank had foreclosed on wrong lot). *See also Jones v. Jones,* 150 Tenn. 554, 266 S.W. 110, 120 (1924) (court stated that it was well-settled that a court of equity may reform a written instrument on the ground of mistake, but held no showing of mutual mistake in the case).

■ Because of this equitable reformation right, First American had an equitable lien on the debtors' residence as of the date of the debtors' current bankruptcy filing. *See Osborne v. McCormack,* 180 Tenn. 526, 176 S.W.2d 824 (1944) ("An equitable lien ... is the right to have the property subjected in a court of equity to the payment of the claim. It is a floating equity until action by the court is invoked."); *Jetton v. Nichols,* 8 Tenn.App.

567, 1928 WL 2152 at *5 (Tenn.App.1928) ("A lien discharged by mistake is, in contemplation of equity, still in existence.... A court of equity will keep alive or restore a lien where the equities of the case require it, and the parties intended that it should not be extinguished.").[4]

■ Notwithstanding this equitable lien, a court of equity will not reform a written instrument even upon a showing of mutual mistake if the rights of innocent third parties have intervened.[5] *See Needham v. Caldwell,* 25 Tenn.App. 189, 154 S.W.2d 535, 538 (1941) ("[A] release or satisfaction entered by accident or inadvertence ... or by a mistake as to an essential fact, such that it is not in accord with the real intention of the parties, may be set aside and the mortgage reinstated, except as the rights of third parties may prevent."). *See also Alston,* 219 S.W.2d at 746; *Duncan,* 132 S.W.2d at 354. The trustee argues that he is that intervening third party pursuant to 11 U.S.C. § 544(a), although he does not specify under which subsection he is proceeding. Section 544(a)(1), (2), and (3) respectively provide the trustee with the status, rights, and powers under applicable state law of a judicial lien credi-

---

**4.** The existence of this equitable lien did not render the second foreclosure sale valid since no court of equity had recognized or restored the lien prior to the sale.

**5.** The law would not consider Bristol Electric or any other junior lienholder in existence at the time of the release to be such an intervening third party even though reformation would arguably demote Bristol Electric from its first priority position which it obtained as a result of the quitclaim deed, if the first foreclosure sale was indeed void. (This court says "arguably" because it would appear that a more accurate characterization is that Bristol Electric has never been in first position since that position has been maintained by First American's equitable lien.). There is no evidence that Bristol Electric was misled by the mistaken release or acted to its prejudice

because of the release. *See Needham v. Caldwell,* 25 Tenn.App. 189, 154 S.W.2d 535, 538 (1941) (court reformed release by first mortgage holder over objection of second lien holder, noting that the second lien holder had made its loan subject to the first lien, that the second lien holder had not acted to its prejudice in reliance on the release, and that to hold otherwise would unjustly enrich the second lien holder); *W. Fed. Sav. & Loan Ass'n v. Ben Gay, Inc.,* 164 Colo. 407, 436 P.2d 121, 123 (1967) ("Where no one is injured by the mistaken release, and the second lien holder has not changed his position in reliance on the fact that his lien has been advanced to first priority status, the mistake should not afford the junior lienor an unwarranted and unfair advantage to the detriment of the senior lien holder who made the mistake.").

tor, a creditor with execution returned unsatisfied, and a bona fide purchaser of real property. *See* 5 COLLIER ON BANKRUPTCY ¶ 544.02 (15th ed. rev.1999).

■ Under Tennessee law, an unrecorded equitable lien would be void and would not prevail over intervening judicial lien creditors or bona fide purchasers without notice. "Since at least 1831, it has been the law in Tennessee that an unrecorded deed of trust or mortgage is null and void as to intervening judgment lien creditors." *Waldschmidt v. Dennis (In re Muller)*, 185 B.R. 552, 554 (Bankr.M.D.Tenn.1995) (citing, *inter alia*, TENN.CODE ANN. § 66–26–103, "Unregistered instruments void as to creditors and bona fide purchasers.-Any of such instruments not so proved, or acknowledged and registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice."). Based on similar laws in other states recognizing the superior title of bona fide purchasers and intervening judgment lien creditors and the chapter 7 trustee's status of these parties under the strong-arm clause of § 544(a), bankruptcy courts have refused to allow the postpetition reformation of a deed of trust, even where the creditor's interest was released in error. *See Peebles v. Commercial Credit Corp. (In re Peebles)*, 197 B.R. 799, 802 (Bankr.W.D.Pa.1996) (creditor could not obtain reformation of its mortgage as against chapter 7 trustee, notwithstanding that error in omitting a certain parcel of

real property from deed of trust was due to mutual mistake) (*dicta*); *Central Bank v. McGregor (In re Whitlow)*, 116 B.R. 158, 159 (Bankr.W.D.Mo.1990) (deed of trust released on wrong property could not be reformed as against chapter 11 trustee who asserts status of bona fide purchaser of real property pursuant to § 544(a)(3)).[6]

Other courts have recognized that pursuant to the powers as a bona fide purchaser under § 544(a)(3), a chapter 7 trustee can avoid liens that were released pre-bankruptcy due to clerical error, inadvertence or oversight. *See Terlecky v. Am. Community Bank (In re Godwin)*, 217 B.R. 540, 542 (Bankr.S.D.Ohio 1997); *In re Price*, 97 B.R. 264, 266 (Bankr. E.D.N.C.1989); *In re Mosley*, 55 B.R. 341, 343 (Bankr.W.D.Ky.1985); *Stewart v. Tenn. Wholesale Drug Co. (In re Haynes)*, 41 B.R. 423, 425 (M.D.Tenn.1984). *See also Midlantic Nat'l Bank v. Bridge (In re Bridge)*, 18 F.3d 195, 204 (3rd Cir.1994) (chapter 7 trustee's rights as hypothetical bona fide purchaser prevailed over mortgagee's rights as holder of unrecorded equitable lien); *Simon v. Chase Manhattan Bank (In re Zaptocky)*, 232 B.R. 76, 83–84 (6th Cir. BAP 1999) (chapter 7 trustee, in exercise of his strong-arm rights as bona fide purchaser, can avoid equitable interest that mortgagee possessed pursuant to defectively executed mortgage); *Wolf v. Mahrdt (In re Chenich)*, 100 B.R. 512, 515 (9th Cir. BAP 1987) (recognizing that chapter 7 trustee as hypothetical bona fide

---

**6.** However, reformation has been permitted in a chapter 13 case where the chapter 13 trustee did not assert the § 544 avoidance powers. *See Kildow v. EMC Mortgage Corp. (In re Kildow)*, 232 B.R. 686, 693 (Bankr. S.D.Ohio 1999) (concluding that debtor could not exercise § 544 avoidance powers, court reformed mortgage over debtor's objection where debtor had completed plan payments and obtained discharge). *See also City Bank*

& *Trust*, 1997 WL 44391 at *1 (state court reformed deed of trust during the pendency of chapter 13 case). Reformation of a mortgage has also been authorized in a chapter 7 case where the trustee abandoned the property without exercising the strong-arm powers. *See Keller v. CIT Group/Consumer Finance, Inc. (In re Keller)*, 229 B.R. 900, 902 (Bankr. S.D.Ohio 1998).

purchaser "takes title to the real property free from all equitable liens").

As stated by the court in *Godwin:*

> [T]he Trustee as a hypothetical bona fide purchaser as of the commencement of this case would not have seen an outstanding mortgage against the ... Property in favor of Citizens due to the erroneous release of that mortgage. As such, the Trustee as a "bona fide purchaser" would prevail over the lien of Citizens pursuant to Ohio law and 11 U.S.C. § 544(a)(3).

*In re Godwin,* 217 B.R. at 542. This court sees no distinction between the foregoing cases and the facts of the present case and accordingly finds no basis under which First American may prevail.

Nonetheless, First American argues that it would be unconscionable to allow the bankruptcy estate and the creditors to receive "an unexpected, unearned windfall," that neither the debtors nor the creditors advanced anything of value in reliance on the quitclaim deed, and that such a result would be at First American's expense even though it received no consideration for the release and was simply attempting to place all parties back into their original position. Neither the equities nor the law, however, lies in First American's favor. As previously discussed, under Tennessee law a court of equity would not reform First American's quitclaim deed to preserve its secured position if the rights of a third party intervened between the time of the release and the reformation action. The bankruptcy trustee is that intervening third party.

As far as First American is concerned, the result reached in this case is no different than if a judgment creditor had placed a lien on the debtors' residence or a bona fide purchaser had obtained an interest in the debtors' residence after the quitclaim deed was recorded. In either situation, First American's equitable interest would be inferior to that of the judgment lien creditor or purchaser. *See In re Muller,* 185 B.R. at 555 (In holding that the trustee as judgment lien creditor prevailed over unrecorded mortgage, court noted that "[h]ad there been no bankruptcy filing, a judgment lien creditor of these debtors levying on [the date of the bankruptcy filing] would defeat Countrywide's unrecorded deed of trust under Tennessee law. The intervention of bankruptcy here causes nothing 'unfair' or 'inefficient' beyond the ordinary application of state law."). The fact that there was no such creditor or purchaser advancing money or taking any action in reliance on the quitclaim deed is irrelevant; a trustee nevertheless has the same status and powers thereof under § 544(a). *See* 5 COLLIER ON BANKRUPTCY ¶¶ 544.05 and 544.08 (15th ed. rev.1999) ("[T]he trustee has the status of a creditor with a judicial lien ... whether or not such a creditor actually exists.") ("As a hypothetical bona fide purchaser, the trustee under [§ 544(a)(3) ] is deemed to have conducted a title search, paid value for the property and perfected its interest as a legal title holder as of the date of the commencement of the case."). Based on the foregoing, reformation or correction of First American's quitclaim deed is inappropriate and First American's equitable lien is avoided by the trustee pursuant to his powers under § 544(a).

■ That being said, the avoidance of the lien held by First American does not thereby elevate Bristol Electric to first position. Rather, the lien of First American is preserved for the benefit of the estate as provided by 11 U.S.C. § 551. In other words, the trustee steps into the shoes of First American and holds a first priority lien on the debtors' residence in the stead of First American. Section 551 of the Bankruptcy Code provides:

Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

As noted by the *Wilkinson* court:

The automatic effect of § 551 would preserve the avoided lien for the estate, thus benefitting the creditors of the estate, including an unsecured claim of the avoided transferee. In effect the application of § 551 prevents creditors who hold subordinate liens from receiving a windfall as a result of the avoidance. Any junior lienholder occupies its original position, as if the first lienholder's interest was not avoided.

*Barclays Am./Mortgage Corp. v. Wilkinson (In re Wilkinson),* 186 B.R. 186, 192–93 (Bankr.D.Md.1995). *See also In re Godwin,* 217 B.R. at 543 (equitable lien of first mortgage holder which had been released through bank's internal clerical error was avoided by trustee and automatically preserved for the benefit of the estate); *In re Price,* 97 B.R. at 265–66 (upon avoidance of first deed of trust that was canceled by mistake, second lien holder did not move into first position since avoided lien was preserved for the benefit of the estate).

The court notes that First American has filed a proof of claim evidencing that it was owed the amount of $55,801.75 as of the date of the filing of the current bankruptcy case. Thus, the trustee has a first lien on the debtors' residence for the benefit of the estate in the amount of $55,801.75, plus postpetition interest which has accrued on First American's claim. The debtors state in their schedules that their residence has a current market value of $52,000.00. To the extent that this value is correct, all of the proceeds from any sale of the debtors' residence by the trustee, net of sale expenses, will be distributed to unsecured creditors in satisfaction of First American's lien now held by the trustee and there will be no amount left over for junior lienholders, regardless of whether these interests were extinguished by or survived the first foreclosure sale. Accordingly, it will not be necessary for this court to determine the validity or invalidity of the first foreclosure sale and whether the junior lien of Bristol Electric survived the sale unless the debtors' residence sells for more than the amount of First American's claim and the administrative expenses associated with the sale.[7]

## IV.

In conclusion, the court will deny First American's motion for summary judgment in its entirety, deny Bristol Electric's motion for summary judgment to the extent that it asserts a first priority lien position in the debtors' residence, and grant the trustee's motion for summary judgment to the extent that it asserts a first priority position in the property in the stead of First American. The issue of whether Bristol Electric or any other creditor holds a lien junior to the interests of the estate, as represented by the avoided lien of First American, will be reserved pending the results of the sale of the debtors' real property. An order to this effect will be entered contemporaneously with the filing of this memorandum opinion.

---

**7.** The chapter 13 trustee should turnover to the chapter 7 trustee funds which were escrowed during the pending chapter 13 case. These funds should be applied toward satisfaction of First American's lien as held by the chapter 7 trustee.